John Scott GARSIDE, Plaintiff,

v.

William WEBSTER, et al., Defendants.

No. C-1-84-1178.

United States District Court,
S.D. Ohio, W.D.

Dec. 18, 1989.

Robert M. Storey, Columbus, Ohio, for plaintiff.

Robert A. Behlen, Jr., Asst. U.S. Atty., Cincinnati, Ohio, for federal defendants.

## ORDER

HERMAN J. WEBER, District Judge.

This matter is before the Court pursuant to the federal defendants' Motion for Summary Judgment (doc. no. 73), plaintiff's Motion for Summary Judgment (doc. no. 82) and the declarations, memoranda and other materials filed by the parties pursuant to Fed.R.Civ.P. 56.

This Court has jurisdiction of this matter under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 and § 552a.

In a previous Order (doc. no. 64), this Court requested the federal defendants file a Vaughn index and concluded generally that to determine the issues in this case, the Court had to decide whether defendants have properly applied the FOIA exemptions to the documents they have withheld from the plaintiff and whether the defendants have discharged in good faith their responsibilities to plaintiff pursuant to FOIA.

This Court has issued a preliminary injunction enjoining the federal defendants from destroying any documents which are the subject of this litigation (doc. no. 33).

The Court has reviewed the arguments made by the parties and has applied the principles of controlling law to the facts presented. The legal standard for consideration and disposition of issues on summary judgment is well settled.

Summary Judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The evidence presented on a motion for summary judgment is construed in favor of the party opposing the motion who is given the benefit of all favorable inferences that can be drawn therefrom. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (original emphasis).

Summary judgment should not be granted unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.*

■ The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 472, 82 S.Ct. 486, 490, 7 L.Ed.2d 458 (1962). "[T]he is-

sue of material fact required by Rule 56(c) ... to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." *First National Bank v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979), the United States Supreme Court has recently stated that the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather than as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.* 106 S.Ct. at 2553; *Anderson*, 106 S.Ct. at 2511.

■ Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Catrett*, 106 S.Ct. at 2553. Significantly, the Supreme Court also instructs that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. *Id.; Anderson*, 106 S.Ct. at 2511. Rule 56(e) requires plaintiff to go beyond the pleadings and by his own affidavits,

designate "specific facts showing that there is a genuine issue for trial." *Id.*

█ Further, there is no express or implied requirement in Fed.R.Civ.P. 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. *Id.* Fed.R.Civ.P. 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories and admissions on file.

█ Pursuant to FOIA, 5 U.S.C. §§ 552 and 552a, plaintiff, John Scott Garside, has requested certain information from the federal defendants pertaining to him personally and also to others. The federal defendants have responded to his requests by supplying the information requested which relates personally to plaintiff. Additionally, the federal defendants have agreed, as a result of this lawsuit, to supply all additional information which is identified by plaintiff which personally relates to him upon the payment by plaintiff of the appropriate search fee, if any. In view of this agreement and the state of the record, this Court holds that the federal defendants have fulfilled their duty to plaintiff under 5 U.S.C. § 552a.

The issues presented by this lawsuit, then, have been framed under 5 U.S.C. § 552. The federal defendants claim by way of their Motion for Summary Judgment (doc. no. 73) that they have complied with the requests of plaintiff and have withheld from plaintiff only the information exempt from disclosure pursuant to 5 U.S.C. § 552(b). Plaintiff, by way of his Motion for Summary Judgment (doc. no. 82), claims that the federal defendants have improperly applied the exemptions to the information withheld. Plaintiff further claims that even if the information withheld by the federal defendants is exempt, this Court must order its release because the public interest so requires.

Under FOIA, the issues the district court must decide *de novo* are: 1) whether to enjoin the federal defendants from withholding requested records, 2) whether to order the production of any requested records improperly withheld, 3) whether to assess against the Government reasonable attorney's fees and other litigation costs reasonably incurred, and 4) whether to issue a written finding that the circumstances surrounding the withholding raises questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding and certify such finding to the agency. 5 U.S.C. § 552(a)(4)(B), (E) and (F).

█ It is axiomatic that government is required to release any information which is properly requested by any person unless it is exempt. It is further the intent of FOIA that the exemptions are to be narrowly construed and the government bears the burden to prove that the information was properly withheld under an exemption. 5 U.S.C. § 552, *U.S. Dept. of Justice v. Julian,* 486 U.S. 1, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988).

The parties have supplied the Court with voluminous materials pursuant to Fed.R. Civ.P. 56 to aid the Court in its determination of this case. While much of the material is redundant, the course of this litigation has distilled the issues and even the redundancy, itself, has shed some light on those issues.

It is astonishing that the plaintiff in less than a decade could generate so much interest in his activities by the federal defendants. This intense interest is demonstrated by the quantity of paper presently a part of the file of this case and the certain knowledge that additional paper exists in the federal defendant's files which has been withheld.

█ In administering FOIA, the federal defendants are required to exercise reasonable care in searching records for requested information and once located to determine objectively whether any exemption applies. The administration of FOIA is a mechanical, objective exercise. The motive

of the plaintiff or the reason of the plaintiff for making the request is not relevant.

In this case, those responsible for searching the records made mistakes. For example, File No. AQ 91–3201 and File No. AQ 91–3210 were reported destroyed but as a result of this litigation were discovered and processed. For another, three additional files were located by the FBI as a result of information supplied by this litigation. As 5 U.S.C. § 552 commands this Court to review government's actions under FOIA *de novo*, we must now embark on that duty. This Court intends to speak on the redactions and withholdings objected to by plaintiff as of this time and not on all the issues which have been raised by the parties and were conceded or mooted by additional disclosures during the course of this litigation.

Plaintiff's various FOIA requests of the federal defendants began in October, 1982. He made requests of the Federal Bureau of Investigation ("FBI"), the Criminal Division of the Department of Justice and the Executive Office for the United States Attorney.

Plaintiff has succinctly framed the issues:

1) FBI headquarters furnished a false and misleading page count (doc. no. 82 at II–A).

2) The federal defendants wrongfully withheld telephone and surveillance records (doc. no. 82 at II–B).

3) The federal defendants are wrongfully withholding records from File No. BU92–17431–54 and 55 (doc. no. 82 at II–C).

4) The Government is improperly withholding information contained in Files No. AQ–91–3201 and AQ–91–3210 (doc. no. 82 at III).

5) The federal defendants' refusal to search after demanding a search fee which plaintiff agreed to pay and using the search fee demand as an obstacle to disclosure is arbitrary and capricious conduct (doc. no. 82 at IV).

6) Detroit files DE91–9380 (20 pages in the entirety), DE91–9571 (10 pages withheld in the entirety), DE–137–7407 (59 pages withheld in the entirety) and Detroit file numbers DE–137–5262 (withheld in its entirety) (doc. no. 82 at V) should be released to plaintiff pursuant to FOIA.

7) The federal defendants are improperly withholding the filming of the parking lot during the abduction on December 5, 1975, Garside's December, 1975 letter to the FBI; Serial CI–92–1668–1–A–108 Exhibit C2; plaintiff's letter to his wife, Sharon Scheurell, Serial DE92–5012–150; withholds from Serial 92–5012–IA–83; withholding of two FBI agents names, Thomas Decker and Philip Kirby on Serials CI–92–1668–1A106 and CI–92–1668–1–A–107; withholding Files No. CV–91–9429 and DE–91–10039 (14 pages withheld in the entirety).

The real claim of the plaintiff is that while acting as an informer for the FBI he became involved in a kidnapping and murder on or about December 5, 1975 to December 11, 1975. Rather than come to his aid and assist him in proving his innocence, the FBI wrongfully refused to support plaintiff's position that he was an informer and denied that he maintained contact with the FBI during the commission of the crime. Plaintiff claims he was convicted and sentenced by the Ohio courts for kidnapping and aggravated murder because his status as an informer was concealed by the FBI.

Plaintiff attempted to establish that he was an informer and in contact with the FBI during the commission of these crimes at the state criminal trial. He later filed a civil rights action in the United States District Court for the Southern District of Ohio, Eastern Division pursuing the same claims. The civil rights action was dismissed by the plaintiff, however, in 1980.

In October, 1982, still pursuing his position that he had been wronged by the FBI, he sought the information which became the subject of the lawsuit. The relationship of the parties during the processing of his FOIA requests proceeded relatively reasonably and uneventfully until plaintiff was required to pay for 261 pages

of information involving a 1968 bank robbery which was outside the scope of his request for information. The record clearly establishes that his request for information primarily concerned the period of time during which the kidnapping and murder occurred, including the time immediately prior to and after the incident. His requests at most included a period of time from 1972 to 1978. No request could be related reasonably to a bank robbery which occurred in 1968.

Both parties have referred to this first issue as section II–A in their respective documents. This dispute involves the charge of $.10 per page made to plaintiff for the release of 261 pages concerning the 1968 bank robbery file. On May 3, 1984, the 261 pages were released by FBI headquarters. On May 7, 1984, plaintiff complained to the FBI headquarters that the release was unresponsive. The FBI claimed that the documents were responsive to Garside's February 2, 1984 request. The parties agree that the adequacy of an agency's response to an FOIA request is measured by the standard of reasonableness. *McGee v. CIA*, 697 F.2d 1095 (D.C. Cir.1983). This release was not reasonably responsive to plaintiff's request thus the sum of $26.10 should be returned or credited to plaintiff.

This Court understands the problem facing the personnel of the agency and their confusion in searching out this information which resulted from the requests which involved at least eight bank robberies. This Court specifically finds that while the federal defendants were in error in processing the 261 pages regarding the 1968 bank robbery, the agency personnel did not act arbitrarily and/or capriciously in releasing this information, however, because of the mistake, the plaintiff should recoup the expenditure he was required to make for these 261 pages. Summary judgment is GRANTED plaintiff on this issue.

Secondly, in Section II–B, plaintiff raises issues concerning telephone and surveillance records, names of special agents, and names of third parties withheld by defendants.

■ It is the opinion of this Court that the prior release of some material, either through inadvertence or as part of another proceeding, does not result in a waiver of any of the exemptions under 5 U.S.C. § 552(b). *See Cooper v. Dept. of the Navy*, 558 F.2d 274, 278 (5th Cir.1977), *aff'd in part and reversed in part*, 594 F.2d 484, 488, *cert. denied*, 444 U.S. 926, 100 S.Ct. 266, 62 L.Ed.2d 183 (1979). This Court holds that each request made under FOIA must stand on its own individual merits. Otherwise, persons in the position of the plaintiff who have had the opportunity to view all of the records during the course of a criminal trial would be placed in a different position than a member of the general public who desires to exercise his or her rights pursuant to FOIA.

■ It is the opinion of this Court that each of plaintiff's requests for information pursuant to 5 U.S.C. § 552 must be considered on the merits of each request as though the request was made by a member of the general public and not by a particular person such as plaintiff who has particularized knowledge and claims particularized rights such as a waiver of exemption because the information was supplied pursuant to court order and/or subpoena in his criminal trial or other prior proceedings.

■ It is the opinion of this Court that the release of Grand Jury information must be made by appropriate application pursuant to the Federal Rules of Criminal Procedure and that a request for Grand Jury records made pursuant to FOIA must be denied by the personnel of the agency pursuant to 5 U.S.C. § 552(b)(3). Disclosure of Grand Jury information must be made pursuant to Fed.R.Crim.P. 6(e)(3)(D) and are exempt from disclosure under 5 U.S.C. § 552(b)(3); also see § 551(1)(B). Once again, the fact that this material was made available to the plaintiff at his criminal trial is irrelevant because under FOIA, the right of this plaintiff to receive requested information under 5 U.S.C. § 552 is as a member of the general public, no more, no less.

In regard to requested telephone information, plaintiff states that he makes no

request for intercepted telephone calls that were made under Title 18 U.S.C. § 2511, nor does he request any Grand Jury testimony, minutes, summaries and polls of grand jurors. Plaintiff's requests for toll call records are only those that do not originate with the Grand Jury. Plaintiff points out that defendants made a telephone call chart of the toll records which was introduced against plaintiff at the trial but it did not contain plaintiff's calls to his control Special Agent Edward McGraff who stated that these records cannot be located.

It is the opinion of this Court that the reason for which plaintiff requested the records and plaintiff's motive in requesting the records is irrelevant to defendants' statutory duty to respond pursuant to FOIA, however, the Court believes a brief summary of the real controversy should be given. Plaintiff was arrested on December 10, 1975. The FBI claimed publicly that it had been attempting to contact Garside since October 21, 1975 but was unable to do so and that while Garside once worked for them as an informant, that was months before the kidnapping which occurred on December 5, 1975.

Plaintiff's position is that he had never been out of contact with the FBI up to and during the abduction on December 5, 1975 through December 10, 1975. Plaintiff claimed that Chester Wysocki, a co-defendant, was plaintiff's assignment from his control agents who were Henry Boyd and Edward McGraff, that plaintiff informed the agents of Wysocki's involvement and that the Crawford kidnapping was going to happen. Plaintiff maintains that this information was furnished to the FBI before the crime occurred and during the crime. As mentioned above, the defendants denied any contact with Garside before and during the commission of the crime other than their attempts to apprehend him.

The federal defendants supplied an FD–302 Report that was purported to be all the telephone calls made and withheld from plaintiff to Edward McGraff. Plaintiff asserts this report indicates a call to Edward McGraff on December 8, 1975. It is impor-

tant to note that McGraff was terminated from his employment with the FBI in February, 1975.

The record of the alleged call from Garside to McGraff, on December 8, 1975 was requested by plaintiff on February 29, 1984, however, McGraff was not working as an agent with the FBI on December 8, 1975. Defendants responded that the search of the central records does not show the Kroger telephone number. On March 13, 1984, plaintiff responded and supplied more information to help locate the telephone records.

This Court ORDERS the defendants to process and release Detroit file No. 92–5012, S A McCormick's 302 report, and the record of the three long distance calls made from the Newark Supermarket on December 8th to the FBI, if any. It is further ORDERED that the defendant's telephone records of calls from plaintiff to the FBI for the period of December 1, 1975 to December 11, 1975, the records of defendants for the period of December 5, 1975 to December 11, 1975 indicating any telephone contact plaintiff had with the FBI from or to Columbus, Ohio, Newark, Ohio, Delaware, Ohio, Albuquerque, New Mexico or Detroit, Michigan and plaintiff's call made on December 9, 1975 at the Presidential Motel to the FBI switchboard of the Detroit division of the FBI be processed and released.

It is the opinion of this Court that those records should be processed and made available to the plaintiff as they were not secured by the Grand Jury as the result of a subpoena from the telephone company or as a result of a wire tap ordered by a court but were actually records of the FBI that should have been and would have been kept routinely in the daily course of business in their files and certainly by the control agent who at this time was Boyd so that he or she would have an accurate record of all conversations he or she would have held with the plaintiff. Summary Judgment is GRANTED to plaintiff accordingly, however, summary judgment is GRANTED to defendants on his other requests as indicated.

It is the opinion of this Court that withholding the names of special agents, informants and other third parties is proper pursuant to (b)(7)(C) and (b)(7)(D).

Plaintiff states that he is not interested in any informant's identity and any reports that accuse him of other crimes.

Plaintiff asserts, however, that he is entitled to the confidential source symbol numbers and the confidential informant file numbers that have been redacted from the documents discussed in doc. no. 68 at 62(a) and (b), asserting that § 552(b)(2) does not apply to this information. The position of defendants is that the disclosure of this information would compromise their filing system with the end result great harm would befall FBI sources and their identity revealed. This Court agrees. This information is exempt under (B)(6) and (b)(7)(C).

Further, the Criminal Division of the Department of Justice released all requested records to the plaintiff with the exception of the names of the FBI Special Agents. Their withholding was proper pursuant to 5 U.S.C. § 552(b)(6) and 5 U.S.C. § 552(b)(7)(C). The opinion by a Department of Justice attorney with respect to pending litigation was properly withheld pursuant to 5 U.S.C. § 552(b)(5). This Court GRANTS summary judgment to the federal defendants on these issues.

It is the opinion of the Court that all surveillance records of December 4, 5, 6, 7, 8, 9, 10, 1975 of John Scott Garfield including those filed under his aliases, John Rogers and John Earl Adams should be processed and released including his arrival near noon on December 9, 1975, at the Farmington Medical Center in a red Firebird rental. Summary judgment is GRANTED plaintiff on this issue.

The third issue raised by the plaintiff involved files BU92–17431, Serials 54 and 55.

The federal defendants represented that Serials 54 and 55 were released to plaintiff in their entirety for his criminal trial. As a result of this FOIA litigation, the federal defendants now concede that contrary to their representations made in other proceedings, not all of serials 54 and 55 were released to plaintiff during his criminal trial. The excuse given now for not releasing the entire serials 54 and 55 pursuant to plaintiff's FOIA request is that the defendants cannot tell what information was released previously for trial. Part of the serials have been released to plaintiff pursuant to his FOIA request.

 It is the opinion of the Court that serials 54 and 55 of FBIHQ file 92–17431 should be released. It has been alleged and stated by the federal defendants that these serials were disclosed to plaintiff without redaction during his state court trial, however, it is now clear that less than the entirety of these materials was furnished to plaintiff in relation to the criminal trial. If an exemption is claimed, any exemption and the rights thereunder are outweighed by the public interest which demands that the Government keep its promises and is faithful to its representations. BU92–17431, Serials 54 and 55 are to be processed, redacting only the names of special agents and third parties under the same criteria used by the federal defendants in determining other releases of information in this case and released to the plaintiff without further costs to plaintiff in the event they were not released as indicated in the record in March of 1985. We note that plaintiff states that defendants did release serials 54 and 55 in March of 1985, however, he complains that these materials were not released to plaintiff at his criminal trial. *This is not before this Court.* The only issue before this Court is whether serials 54 and 55 were released pursuant to his FOIA request and apparently they have been.

It is important to note that we are not considering the effect of the foregoing on plaintiff's criminal trial. This Court has determined that the actions by others and misinformation supplied by others, if any, *does not make the acts of withholding by agency personnel, of part of serial 54 and 55, arbitrary and/or capricious under FOIA* particularly because these serials have been processed and released. Summary judgment is GRANTED to each party accordingly on this issue.

The next two issues, 4 and 5, relate to the federal defendants' admitted failure to locate three files, their statement that Files No. AQ–91–3201 and AQ 91–3210 were destroyed, and their statement that Cincinnati files No. 92–1668 consisted of 9500 to 9800 pages. (Doc. no. 82 at III and IV).

At this time, the federal defendants have discovered and released AQ–91–3201, 91–3210 and the three files, FBIHQ 91–47563, 91–46192 and 91–44875. If they have not, the files should be processed and released pursuant to the representation made by the federal defendants in their brief.

The estimate of the number of pages in the file, 9500 to 9800, and the notice to plaintiff that his costs would be $500.00 was erroneous. After the actual search, the federal defendants discovered and released 839 pages out of a total of 3,942 pages.

■■■ It is the duty of agency personnel to inform a requester of information of the approximate cost the particular requestor will incur as a result of his or her request. In this case, the estimate of cost included the search of third party files that may contain requested information concerning plaintiff. After the actual search, 839 pages were released. Plaintiff was charged for only the pages released.

■■■ In view of the extensive disclosure in this case made in the first instance, the release of the File Nos. AQ 91–3201 and 91–3210 when the defendants discovered their error in stating they were destroyed, and the release of the three files discovered during this litigation, this Court holds that the personnel of the agency, although mistaken, did not act arbitrarily or capriciously in this regard. *Meeropol v. Meese*, 790 F.2d 942 (D.C.Cir.1986).

■■■ In view of the fact that a hand search of voluminous third party files was necessary to determine the existence of information relevant to plaintiff's request, this Court holds that the estimate made of the cost to plaintiff for the search while mistaken, was not an arbitrary or capricious act by agency personnel.

The sixth issue involves File Nos. DE 91–9380, DE 91–9571, DE 137–7407 and DE 137–5262.

DE 137–5262 is an informant file regarding Wysocki and DE 137–7407 is an informant file. Both are exempt pursuant to § 552(b)(7)(C) and (b)(7)(D).

DE 91–9571 is included in FBIHQ 92–17431 serial 55 which has been ordered processed and released to plaintiff.

DE 91–9380 is a Bank Robber Control file released in part and withheld in part. The 20 pages withheld are claimed to be exempt pursuant to § 552(b)(7)(C) because they contain names and information about third parties and also pursuant to § 552(b)(3) Grand Jury information. This Court agrees that such information is exempt.

■■■ Plaintiff, however, asserts that the public interest requires that this information be released in spite of the exemption because it will disclose wrongdoing on the part of the defendant.

In this regard, the defendants strongly maintain they have not engaged in wrongdoing. Plaintiff's claim that the defendants have wronged him was first presented to the state trial judge who presided over his criminal trial. The judge reviewed this contention and the documents. The plaintiff next presented the matter to the federal district court in a civil rights action. This case was dismissed at plaintiff's request.

The wrongdoing claimed by plaintiff is the failure of the defendants to support plaintiff's claim that he was acting as an informant for the FBI during the commission of his crime of conviction and that he was in touch with the FBI during the time of the incident December 5, 1975—December 10, 1975.

Plaintiff claims he contacted Ed McGraff. It is uncontroverted that Ed McGrath and Agent Ward were at one time his control agents, however, Ed McGrath and Agent Ward resigned from the FBI in February, 1975, and Hank Boyd became plaintiff's contact agent from that time to the conclusion of his informant status.

Plaintiff's claimed contact, then, with Ed McGrath would not have been, if it did occur, with the defendants. In fact, Neil M. Laughlin, Prosecuting Attorney, stated in a letter dated December 29, 1976, which is attached to Bell Affidavit, (doc. 65), "At no time on December 5, 1975, after the kidnapping had in fact occurred, did John Garside ever contact either Ed McGrath or Hank Boyd or any other agent of the FBI to inform them of the whereabouts of Crawford or of the persons involved in the kidnapping. This was admitted to by John Garside himself."

It is the opinion of this Court that there has been no demonstration in this record that the public interest, to control the actions of government and keep those actions within due bounds, overrides the expressed intent of Congress to afford protection to individuals and government alike in the form of exemptions from disclosure of certain information.

On the sixth issue, the Court GRANTS summary judgment to the defendants.

In his seventh issue, plaintiff requests the Court to order the release of (a) the bank surveillance film of the parking lot which was taken during the abduction, the federal defendants state that no such film exists; (b) Garside's December, 1975 letter to the FBI, the federal defendants state the letter was released; (c) Garside's letter to his wife, the federal defendants state that this letter was forwarded to his wife and no copy exists in their file; (d) Names of FBI agents, this has been discussed before; (e) File Nos. CV 91–9429 and DE 91–10039, 14 pages withheld in their entirety, the federal defendants state they are attempting to locate the files for processing.

It is the finding and Order of the Court that a) the film requested does not exist; b) that a clear copy of Garside's letter should be released in its entirety to plaintiff; c) that a clear copy of Garside's letter to his wife, should be processed and released; d) the names of agents are exempt under (b)(7)(C) and (b)(7)(D); e) the 14 pages should be located, processed and released.

In conclusion, this Court GRANTS summary judgment to the plaintiff as follows:

1. The sum of $26.10 deposited by plaintiff should be returned to plaintiff by either payment or credit to his account.

2. The defendants should process and release DE File No. 92–5012, S.A. McCormick's 302 report, and the record of any calls from plaintiff to the FBI made to or from Newark, Ohio, Columbus, Ohio, Delaware, Ohio, Albuquerque, New Mexico or Detroit, Michigan for the period of December 1, 1975 to December 11, 1975.

3. All surveillance records of plaintiff for December 4, 5, 6, 7, 8, 9, 10, 1975, including those filed under his aliases John Rogers and John Earl Adams should be processed and released.

4. Serials 54 and 55 of FBIHQ file No. 92–17431 should be processed and released.

5. File Nos. AQ 91–3201, AQ 91–3210, FBIHQ 91–47563, 91–46192, 91–44875 should be processed and released.

6. A clear copy of Garside's December, 1975 letter to the FBI and his letter to his wife should be processed and released.

7. The File Nos. CV 91–9429 and DE 91–10039, 14 pages withheld in its entirety should be processed and released.

On all other issues, including the claim that the federal defendants processed plaintiff's requests for information arbitrarily and capriciously, summary judgment is GRANTED to the federal defendants and are DISMISSED. Each party shall bear their own costs. This case is terminated on the docket of this Court. The injunction issued (doc. no. 33) is CONTINUED until further order of the Court.

IT IS SO ORDERED.