**The NEW YORK TIMES COMPANY, Plaintiff,**

v.

**NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, Defendant.**

**Civ. A. No. 86–2860.**

United States District Court, District of Columbia.

Dec. 12, 1991.

---

---

### MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

This Freedom of Information Act ("FOIA") case is before the Court for the second time, on remand from the Court of Appeals. On December 7, 1990, the Court of Appeals reversed this Court's earlier decision granting summary judgment in plaintiff's favor and held that a voice recording of the Challenger astronauts is a "similar file" for purposes of FOIA Exemption 6. This Court must now balance the relevant privacy interests in non-disclosure against the public interest in disclosure to determine whether the tape should be released. Pending before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, the Court will grant defendant's motion for summary judgment and deny plaintiff's motion for summary judgment.

### BACKGROUND

Seventy-three seconds after taking off from Cape Canaveral on January 28, 1986, the space shuttle Challenger disintegrated

over the Atlantic Ocean and crashed into the sea, killing all seven astronauts aboard. During the period beginning shortly before lift-off and ending when the Challenger lost all power upon disintegration, a digital tape from the space shuttle's "OPS 2" system recorded the astronauts' voices and various background sounds. NASA was able to recover the OPS 2 tape from the ocean floor approximately six weeks after the disaster.

On July 18, 1986, a New York Times reporter submitted a written FOIA request to NASA seeking "transcripts of all voice and data communications" recorded aboard the Challenger as well as "copies of the voice communications tapes." NASA responded on August 1, 1986, with a transcript of the OPS 2 tape, but it denied the request for a copy of the tape itself, claiming exemption under § 552(b)(6) of FOIA. After unsuccessfully appealing the decision to the Office of the Administrator of NASA, plaintiff filed suit in this court on October 20, 1986. Plaintiff did not dispute that the transcript of the tape which defendant had provided was accurate insofar as it indicated what words were actually spoken in the Challenger cabin;[1] rather, the reporter who submitted the FOIA request suggested that there was "factual information concerning the events surrounding the shuttle accident" to be gleaned from inflections of the astronauts' voices and background noises.

This Court granted plaintiff's motion for summary judgment on June 3, 1987, holding that Exemption 6 was inapplicable to the Challenger tape because the tape did not fall within the definition of "similar file" and, therefore, did not meet the threshold Exemption 6 standard. Although a three-judge panel of the Court of Appeals initially affirmed that ruling, a majority of the Court of Appeals vacated the panel decision and ordered an *en banc* hearing. By decision issued December 7, 1990, the Court of Appeals held, in a 6–5 vote, that the tape did meet the "similar files" threshold test of Exemption 6. *New York Times Co. v. National Aeronautics and Space Administration*, 920 F.2d 1002 (D.C.Cir.1990) (*en banc*). The Court of Appeals remanded the case for consideration of whether the withheld tape satisfied the remaining criteria of Exemption 6, specifically, for a determination "whether any invasion of the astronauts' (or their families') privacy that the disclosure of the Challenger tape would cause is or is not 'clearly unwarranted' when compared to the 'citizens' right to be informed about what their government is up to.' " *New York Times*, 920 F.2d at 1010 (citation omitted).

Both parties have now again moved for summary judgment. Because there are no genuine issues of material fact in dispute, the Court's consideration of these motions is appropriate.

### DISCUSSION

■ Exemption 6 of FOIA provides that an agency shall not disclose "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (1988). Because there is no longer any doubt that the tape sought here satisfies the threshold requirement of Exemption 6, the Court must now determine whether disclosure of the tape would compromise a substantial privacy interest. If no significant privacy interest is implicated, FOIA demands disclosure. *National Ass'n of Retired Federal Employees v. Horner*, 879 F.2d 873, 874 (D.C.Cir.1989) (hereinafter "*NARFE*"), *cert. denied*, 494 U.S. 1078, 110 S.Ct. 1805, 108 L.Ed.2d 936 (1990). If, on the other hand, a substantial privacy interest is at stake, then the Court must weigh that privacy interest in nondisclosure against the public interest in release of the tape in order to determine

---

**1.** In the reporter's affidavit submitted with plaintiff's original summary judgment motion, the reporter stated that he wanted to judge for himself "what words were actually spoken." However, at oral argument before this Court on the original cross-motions for summary judgment, counsel for plaintiff did not dispute that the transcript was substantively accurate; rather, counsel suggested that the tape was subject to more than one "interpretation" based upon the listener's understanding of voice inflections and background noises.

whether, on balance, disclosure would work a "clearly unwarranted" invasion of personal privacy. *Id.*

### 1. *The Privacy Interest*

NASA contends that the privacy interest at issue in this case is one enjoyed by the families of the Challenger astronauts. NASA characterizes the interest here as one that protects against disclosures which would cause the astronauts' survivors to suffer additional anguish:

> One need only assume that, given the demonstrated public and press interest in the Challenger accident and its effect on the families of the astronauts, the press will not overlook an opportunity to obtain a recording of the astronauts' last words.... At that point, it is a certainty that inquiries will be made of the families to obtain their reactions to hearing the voices of their loved ones; that there will be a proliferation of print articles presuming to uncover and describe the emotional state of the astronauts during the period captured by the tape; ... It simply is not reasonable to assume that the families would be able to prevent the press inquiries, to stifle the public's curiosity, or even avoid exposure to the news accounts.

Defendant's Supplemental Memorandum in Support of Summary Judgment at 9.

■ The Court finds that the privacy interest asserted on behalf of the Challenger families is a valid and substantial one. Plaintiff's claim that the Challenger families cannot assert a privacy interest in the tape because none of the relatives actually speak or are referred to on the tape is specious. This Circuit has recognized Exemption 6 privacy interests of relatives in various records of deceased family members. *See, e.g., Badhwar v. United States Dep't of Air Force,* 829 F.2d 182, 185–86 (D.C.Cir.1987) (families of deceased aircraft pilots have privacy interest in autopsy reports which would be "of a kind that would shock the sensibilities of surviving kin"; case remanded to trial court to determine whether disclosure of autopsy would be "clearly unwarranted invasion of personal privacy"). More importantly, the Court of Appeals acknowledged such a privacy interest in this very case. In its remand to this Court, the Court of Appeals made clear that "NASA is entitled to an opportunity to prove its claim that release of the tape would invade the privacy of the deceased astronauts, *or of their families." New York Times,* 920 F.2d at 1004 (emphasis added). Thus, consideration of the Challenger families' privacy interests by this Court is entirely appropriate.

■ Plaintiff also contends that, because the tape pertains solely to official government business and relates entirely to a public event, no privacy interest is implicated by its release. Moreover, plaintiff argues that, because NASA has published a transcript, no privacy interest can remain in the tape itself. The aim of Exemption 6 is to guard against unnecessary disclosure of files "which would contain 'intimate details' of a 'highly personal' nature." *Getman v. NLRB,* 450 F.2d 670, 675 (D.C.Cir. 1971) (citation omitted). According to plaintiff, the tape contains no such "intimate details," as it records only technical observations during the shuttle's launch period.

However, plaintiff is misconstruing the nature of the privacy interest implicated by disclosure of the tape. NASA does not dispute that the substantive information contained in the tape is technical and nonpersonal. Rather, the "intimate detail" that underlies the privacy interest in this tape is the sound of the astronauts' voices. Exposure to the voice of a beloved family member immediately prior to that family member's death is what would cause the Challenger families pain. *What* the astronauts said may not implicate privacy interests; NASA has not argued that it does and has, in fact, provided the public with a transcript of the tape's substantive contents. But *how* the astronauts said what they did, the very sound of the astronauts' words, does constitute a privacy interest. This is the "intimate detail" that the Challenger families seek to protect from disclosure.

Moreover, this privacy interest is substantial. This Circuit has held that the privacy interest under Exemption 6 includes "reasonable expectations of undisturbed enjoyment in the solitude and seclusion of [one's] own home." *NARFE*, 879 F.2d at 876. In *NARFE* the Court of Appeals found that retired federal employees had more than a *de minimis* privacy interest in employee name and address lists kept by their federal employers. The Court of Appeals determined that release of the names and addresses on those lists could "subject the listed annuitants 'to an unwanted barrage of mailings and personal solicitations,'" and that such a "fusillade" was more than a *de minimis* assault on privacy. *Id.* The Challenger families potentially face a far more disruptive assault on their privacy than the employees in *NARFE*, should the tape be disclosed. They may be subjected not just to a barrage of mailings and personal solicitations, but also to a panoply of telephone calls from media groups as well as a disruption of their peace of mind every time a portion of the tape is played within their hearing. Thus, the Court finds that their privacy interest is substantial.

### 2. *The Public Interest*

Plaintiff asserts that the public has a strong interest in disclosure of the tape because it is the "best available record of governmental activity aboard the Challenger shuttle during the moments prior to 'the worst disaster in the history of space exploration.'" Plaintiff's Substitute Memorandum at 32 (citation omitted). Plaintiff also argues that "[t]he public unquestionably has a strong and legitimate interest in gaining a full understanding of the disaster, and of the conduct of the agency and its employees in the events and activities during and after that incident." *Id.* The

Court fully agrees with the latter contention: the public has an undeniable interest in learning about NASA's conduct before, during, and after the Challenger disaster. However, the Court remains unconvinced that release of the disputed tape will serve that interest in any way.

■ The Supreme Court has recently narrowed the scope of what falls within the definition of a valid "public interest" under FOIA. In *United States Dep't of Justice v. Reporters Committee*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989), the Supreme Court upheld the FBI's refusal to disclose a private citizen's "rap sheet" under FOIA.[2] In determining that the public interest was insufficient to mandate disclosure of the requested records, the Supreme Court applied the following standard:

> The basic policy of "'full agency disclosure ...'" focuses on the citizens' right to be informed about "what their government is up to." Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct.... Indeed, response to this request would not shed any light on the conduct of any Government agency or official.

*Id.* at 773, 109 S.Ct. at 1481. In crafting this standard, the Supreme Court reiterated that the Congressional purpose underlying FOIA was to "'contribut[e] significantly to public understanding *of the operations or activities of the government.*'" *Id.* at 775, 109 S.Ct. at 1483 (emphasis in original).

---

**2.** Although *Reporters Committee* discussed the public interest standard in the context of FOIA's Exemption 7(C), the special privacy exemption for law enforcement records, the character of the disclosure interest under Exemption 6 is no different. *Federal Labor Relations Auth. v. United States Dep't of the Treasury Financial Management Serv.*, 884 F.2d 1446, 1451 (D.C.Cir. 1989), *cert. denied*, 493 U.S. 1055, 110 S.Ct. 863,

864, 107 L.Ed.2d 947, 948 (1990). Where Exemption 6 and Exemption 7(C) differ is in the balancing process: Exemption 7(C) requires the Court simply to balance the privacy interest against the public interest, while Exemption 6 applies a stricter standard, requiring "a clearly unwarranted invasion of personal privacy" before the balance shifts in favor of the privacy interest.

■ The Court cannot agree with plaintiff that the voice inflections and background noises which are contained only in the tape would "contribute significantly" to the public's understanding of the operations of NASA. The only argument plaintiff has put forward in support of the significance of voice inflections and background noises is that these *might* reveal something as to whether the astronauts knew about the disaster and their impending deaths. NASA has submitted several affidavits by personnel who have listened to the tape, all of whom insist that, aside from the sound of the solid rocket boosters, no background noises or ambient cabin sounds whatsoever can be discerned on the tape. Plaintiff's claim, then, is at best mere speculation. Even assuming, however, that plaintiff's speculations were true, and that there is some voice inflection or some background noise on the tape which indicates that the astronauts knew they were going to die, this Court cannot see how that information contributes anything to the public's knowledge of how NASA operates. Such information, could it be gathered from voice inflections and background noises, sheds absolutely no light on the conduct of any Government agency or official. What the astronauts knew or did not know about the explosion says nothing about the operations of NASA.

Moreover, NASA has provided the public with a transcript of the tape. This transcript reveals to the public every word that was spoken in the cabin. Plaintiff does not dispute its accuracy, but hypothesizes that information can still be gleaned from voice inflections and background noises. The extremely speculative and subjective nature of this additional information, if available, precludes any finding that the information would "significantly contribute" to the public understanding of the Challenger disaster. Thus, the Court finds that the public interest in disclosure of the actual tape, with the highly speculative conclusions which might be drawn from it, is very minimal, if it can even be said to exist at all.

### 3. The Balance

■ The Court must now undertake a balancing test to determine whether the disclosure of the tape "would constitute a *clearly unwarranted* invasion of personal privacy." 5 U.S.C. § 552(b)(6) (1988) (emphasis added). Normally, the "clearly unwarranted" language of Exemption 6 weights the scales in favor of disclosure. *See Getman v. NLRB*, 450 F.2d 670, 674 and n. 11 (D.C.Cir.1971). However, where the privacy interest is substantial, the public interest uncertain, and where the agency has already released materials responsive to the request, the balance tips towards non-disclosure. *Ripskis v. Department of Housing and Urban Dev.*, 746 F.2d 1, 4 (D.C.Cir.1984). Precisely such a situation is presented here. The Court has found that the Challenger families have a substantial privacy interest in non-disclosure of the tape. Plaintiff has asserted at best a speculative public interest in disclosure. NASA has made a written transcript of the tape available to the public. Thus, the Court determines that the privacy interest in non-disclosure clearly outweighs the public interest.

### CONCLUSION

The Court finds that the Challenger families' privacy interest in the tape in question outweighs the public interest such that release of the tape would constitute a clearly unwarranted invasion of the families' personal privacy. Therefore, the Court hereby denies plaintiff's motion for summary judgment and grants defendant's motion for summary judgment.