DOW JONES & COMPANY, INC. and Robert L. Bartley, Plaintiffs,

v.

UNITED STATES DEPARTMENT OF JUSTICE, Defendant.

No. 94 Civ. 0527 (SS).

United States District Court, S.D. New York.

Jan. 5, 1995.

**146**

Dow Jones & Company, Inc. Legal Dept., New York City (Stuart D. Karle, of counsel), for plaintiffs.

Mary Jo White, U.S. Atty., S.D.N.Y., New York City (Steven I. Froot, of counsel), for defendant.

### OPINION AND ORDER

SOTOMAYOR, District Judge.

Plaintiffs Dow Jones & Company, Inc. ("Dow Jones") and Robert L. Bartley ("Bartley") seek disclosure, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, of two reports, one prepared by the United States Park Police (the "Park Police") and the other by the Federal Bureau of Investigation (the "FBI"), concerning the death of former deputy White House Counsel Vincent W. Foster, and a photocopy of a torn-up note (the "Note"), apparently written by Foster, and found in his briefcase several days after his death. The Department of Justice ("DOJ") has refused to release portions of the Reports or copies of the Note, maintaining that 5 U.S.C. §§ 552(b)(7)(A) & 552(b)(7)(C) exempt them from disclosure. Plaintiffs move, pursuant to Fed.R.Civ.P. 56, for partial summary judgment enjoining DOJ from withholding the requested documents on the ground that DOJ waived the claimed exemptions. DOJ cross-moves for summary judgment dismissing the complaint. For the reasons discussed below, plaintiffs' motion is denied in part and granted in part, and defendant's motion is granted in part and denied in part.

### FACTUAL BACKGROUND

The relevant facts, set forth in a joint Statement of Stipulated Facts, dated April 18, 1994, are not in dispute. On or about

July 20, 1993, then deputy White House counsel Vincent W. Foster was found dead in Fort Marcy Park, McLean, Virginia. The Park Police began an investigation into the circumstances of Foster's death. A week after Foster's death, the White House announced that a torn-up note had been retrieved from Mr. Foster's briefcase, and the following day the FBI commenced an investigation into the discovery and handling of the Note.

## A. *The DOJ Press Conference*

At a press conference held on August 10, 1993 (the "Press Conference"), the then Deputy Attorney General announced that the Park Police and the FBI had provided him with completed reports (the "Reports") of their respective investigations. The Chief of the Park Police, Robert Langston, and the Special Agent in charge of the FBI's Washington, D.C. field office, Robert Bryant, who had both read all or part of their agencies' respective Reports, acted as agency spokespersons and discussed the investigations and the conclusions reached. Among the information disclosed at the Press Conference was that:

1. based on the condition of the scene, the medical examiner's findings and information gathered during its investigation, the Park Police had concluded that Mr. Foster's death was a suicide;

2. the FBI had completed its investigation into the handling of the Note and determined that nothing illegal or improper had occurred;

3. the White House Counsel's office had conducted the initial search of Mr. Foster's office and set aside its initial invocation of the executive privilege after discussions with DOJ, ostensibly prompted by discussions between the Park Police and DOJ about the privilege issue;

4. there were no fingerprints on the Note when it was turned over to the FBI, only a smudged palm print, and the Park Police could not determine who had torn up the Note;

5. Mr. Foster's widow told investigators that she had advised her husband to write a list of issues that had been troubling him;

6. only one gun was found near Mr. Foster's body, and members of the Foster family told investigators they believed the gun to be Mr. Foster's;

7. Mr. Foster had spoken with a doctor about depression, and anti-depressant medication had been prescribed, but investigators were unaware of any particular incident that might have prompted Mr. Foster to commit suicide.

Noting that the press "m[ight] want to see [the Note] so that [they] could describe what it looks like," the Deputy Attorney General informed the audience that Carl Stern of DOJ would "have a copy available and anyone who want[ed] to see it [wa]s welcome to see it." Transcript at 1. Thereafter, members of the media inspected the Note in Mr. Stern's office; plaintiff Bartley viewed the Note in October 1993.

Prior to concluding the Press Conference, Mr. Stern stated that media members who wanted to obtain copies of the Reports should submit FOIA requests to DOJ. DOJ received plaintiffs' request (the "FOIA Request") for the Reports on August 18, 1993.

## B. *Appointment of Independent Counsel Fiske*

On January 20, 1994, Attorney General Janet Reno appointed Robert Fiske independent counsel (the "Independent Counsel") to investigate whether any individuals or entities had violated any federal laws relating in any way to the President or Mrs. Clinton's relationship to Madison Guaranty Savings & Loan, Whitewater Development Corporation or Capital Management Services. The Independent Counsel was also authorized to investigate and prosecute any other violations of federal criminal law "developed during" his investigation of the above matters "and connected with or arising out of that investigation," any violations of 28 U.S.C. § 1826, and any obstruction of justice or false testimony in connection therewith. Under this authority, the Independent Counsel's investigation has inquired into the circumstances

surrounding Vincent Foster's death and events occurring in the White House following his death, including the discovery and handling of the Note.

## C. *DOJ's Denial of the FOIA Request*

### 1. *The Reports*

As of January 28, 1994, plaintiffs had received no response to their FOIA Request, and thereafter, commenced this action. By letter dated February 28, 1994, Independent Counsel Fiske informed DOJ that public disclosure of all or any part of the Reports would substantially prejudice his investigation of the events covered therein and he claimed that the Reports were exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A) ("Exemption 7(A)"). Exemption 7(A) excludes from the FOIA's mandatory disclosure requirements:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings.

Based on Independent Counsel Fiske's assessment of the propriety of disclosing the Reports, DOJ, in its answer to the complaint, asserted that "the public release of all or any part of the records at this time would be detrimental to the investigation currently being conducted by" Independent Counsel Fiske.

### 2. *The Note*

After DOJ answered the complaint in this action, Independent Counsel Fiske advised the agency that public release of the Note would not be detrimental to his investigation, and hence, Exemption 7(A) would not bar its disclosure. DOJ reviewed the Note to determine if any other FOIA exemptions applied, and ultimately concluded, after consulting with the attorney representing the family of Vincent Foster, that it would withhold the document pursuant to 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)"). Exemption 7(C) exempts "records or information compiled for law enforcement purposes ... to the extent that the[ir] production ...

could reasonably be expected to constitute an unwarranted invasion of personal privacy."

## D. *The Cross–Motions for Summary Judgment*

Both the plaintiffs and DOJ have moved for summary judgment. Plaintiffs seek partial summary judgment on the grounds that disclosures made by DOJ, the Park Police and the FBI at the Press Conference waived Exemption 7(A) to the extent it applied to the Reports. Plaintiffs, request an *in camera* review of the Reports for the Court to determine which segments should be released under the waiver.

DOJ in turn seeks summary judgment dismissing plaintiffs' complaint contending that no genuine issues of material fact exists as to whether Exemption 7(A) applies to withheld sections of the Reports, and that plaintiffs have not established that the exemption has been waived. DOJ further requests summary judgment as to the propriety of its withholding of the Note under Exemption 7(C).

## E. *Subsequent Developments*

After the cross-motions for summary judgment had been fully briefed, and prior to the oral argument scheduled for July 15, 1994, Independent Counsel Fiske announced on June 30, 1994, that his investigation into the death of Vincent Foster had been completed, and he issued a written report concluding that Foster's death had been a suicide. Fiske further determined that "substantial portions" of the Park Police Report could be released without interfering with his continuing investigation. Fiske also announced that his investigation into the handling of Mr. Foster's documents by the White House immediately following Foster's death, an area of inquiry covered by the FBI Report and a portion of the Park Police Report, was in its final stages and would be completed shortly.

In a letter to the Court dated July 12, 1994, DOJ stated that it was reviewing whether any other FOIA exemptions applied to the portions of the Park Police Report that Fiske concluded could be released. On July 20, 1994, DOJ released about 91 pages

of the Park Police Report, from which material had been redacted pursuant to FOIA Exemptions 7(A) and 7(C). DOJ continued to withhold the redacted portions of the Park Police Report and the entire FBI Report pursuant to Exemption 7(A).

On September 8, 1994, I requested that the parties submit additional papers on the issue of whether the July 20, 1994 disclosure of portions of the Park Police Report had placed into the public domain information contained in the undisclosed portions of the Park Police Report and the FBI Report such that Exemption 7(A) would no longer apply to those undisclosed documents. DOJ submitted its brief on September 19, 1994; plaintiffs submitted their response on September 26, 1994. Appended to DOJ's response was a declaration by newly appointed Independent Counsel Kenneth W. Starr, which stated that although Independent Counsel Fiske had concluded his investigation of the death of Vincent Foster and released those portions of the Park Police Report relevant to that investigation, further release of portions of the Park Police Report and the FBI Report would interfere with Starr's ongoing investigation relating to the handling of documents in Mr. Foster's White House office immediately following his death.

### DISCUSSION

### I. Exemption 7(A)

#### A. Requirements

■ FOIA sets a policy favoring government disclosure of documents. *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 220–21, 98 S.Ct. 2311, 2316–17, 57 L.Ed.2d 159 (1978); *Department of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976); *EPA v. Mink*, 410 U.S. 73, 79–80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). Documents are exempt from disclosure only if they come within one of the nine exemptions specified in FOIA. 5 U.S.C. § 552(b). Exemptions from FOIA disclosure are narrowly construed, *see Spannaus v. United States Dep't of Justice*, 813 F.2d 1285, 1288 (4th Cir.1987), and the agency seeking to withhold documents bears the burden of proving the applicability of a claimed FOIA

exemption. *Carney v. United States Dep't of Justice*, 19 F.3d 807, 812 (2d Cir.1994).

In their initial moving papers, plaintiffs did not challenge Exemption 7(A)'s applicability to the Reports. In subsequent papers, however, they asserted that genuine issues of fact existed as to the effect release of all or portions of the Reports would have on Independent Counsel Fiske's investigation. First, plaintiffs claimed that the release of the Reports "would represent little threat to Mr. Fiske's investigation given that it is unrelated to the earlier, completed FBI and Park Police probes." Pl. Mem. in Further Support of Motion for Partial Summary Judgment ("Pl. Supp. Mem.") at 11–12. Second, substantial questions existed, they argued, as to the scope of circulation of the Reports before and after Independent Counsel Fiske's appointment. Plaintiffs surmised that the Reports probably were not kept "under lock and key for the entire five month interim when no investigation was pending" (Pl. Supp. Mem. at 13), arguing that it would be "human nature" for friends and associates of Mr. Foster to seek review of the Reports. *Id.*

■ Summary judgment is appropriate only when the movant demonstrates that there is no genuine issue as to any material fact and that party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). FOIA cases are not immune to summary judgment, and mere disagreement between the parties as to the probable consequences of disclosure will not defeat an adequately supported summary judgment motion. *See Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 313–14 (D.C.Cir.1988) (a contrary rule would mean that "any motion for summary judgment could readily be defeated by submission of a counteraffidavit that merely draws from a single set of uncontroverted facts a conclusion different from that reached by the agency").

■ Prior to Independent Counsel Fiske's determination that disclosure of substantial portions of the Park Police Report would not interfere with his ongoing investigation, DOJ had clearly met its burden of demonstrating that the Reports came within Exemption 7(A). An agency affidavit or declaration pro-

viding reasonably detailed explanations why withheld documents fall within a claimed exemption is sufficient to sustain the agency's burden on summary judgment. *Spannaus*, 813 F.2d at 1289. Here, DOJ submitted declarations of Independent Counsel Fiske (collectively the "Fiske Declaration") which identified, in a general manner, the information contained in the Reports, and explained how dissemination of these documents might impede his investigation. Specifically, the Fiske Declaration averred that the Reports contained, *inter alia*, summaries of interviews by the Park Police and the FBI with relevant witnesses; reports of investigative steps taken by the Park Police in connection with the investigation of Mr. Foster's death; copies of documents found in Mr. Foster's possession; an autopsy report; documents obtained from the White House in connection with both investigations; and computer-generated documents. Fiske Declaration ¶ 4. The Fiske Declaration further stated that public disclosure of information found in the Reports, such as statements by interviewees and the facts gathered and the conclusions reached as to certain matters, might affect the testimony or statements of other witnesses and could severely hamper the Independent Counsel's ability to elicit untainted testimony. *Id.* ¶ 7.

Such potential harm has been recognized to warrant exemption from disclosure under Exemption 7(A). *See Spannaus*, 813 F.2d at 1289 (possible fabrication of fraudulent alibis sufficient to warrant 7(A) exemption). Certainly, plaintiffs' contrary view of the potential harm posed by disclosing the Reports did not, prior to Independent Counsel Fiske's statements of June 30, 1994, create an issue of material fact as to whether Exemption 7(A) applied to the Reports. *Alyeska*, 856 F.2d at 313–14 (an FOIA plaintiff's competing conclusion regarding a single set of uncontroverted facts does not defeat an agency's properly supported motion for summary judgment).

Nor did plaintiff's mere speculation that the Reports were not kept under lock and key raise an issue of material fact or otherwise cast doubt upon the credibility of the Fiske Declaration. Agency affidavits or dec-

larations are accorded a presumption of good faith, *Carney*, 19 F.3d at 812, and only tangible evidence of bad faith, not mere conjecture that representations made by the agency are incredible, may overcome that presumption.

Consequently, prior to Independent Counsel Fiske's decision that disclosure of significant sections of the Park Police Report posed little threat to his investigation, DOJ had demonstrated, as a matter of law, that the Reports fell within Exemption 7(A), and thus, DOJ's entitlement to summary judgment.

> If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the Government's position. The court is entitled to accept the credibility of the affidavits, so long as it has no reason to question the good faith of the agency.

*Id.*

DOJ's subsequent disclosure of portions of the Park Police Report, however, raised questions as to whether Exemption 7(A) applies to the withheld portions of the Park Police Report and to the FBI Report, since such disclosure may have placed in the public domain the specific information contained in the documents or excerpts DOJ seeks to withhold. Questions about the continued applicability of Exemption 7(A) were resolved by the Declaration of Independent Counsel Starr, dated September 16, 1994, submitted with DOJ's supplemental letter brief, which stated,

> The information contained in the FBI Report and the portions of the Park Police Report that have not been disclosed is central to my continuing investigation. The questions addressed in this inquiry are wholly separate and apart from those addressed in the June 30 Fiske report. Consequently, the prior release of portions of the Park Police Report relating to the issues in the Fiske report does not adversely affect this continuing investigation.

### B. *Waiver*

 Voluntary disclosures of all or part of a document may waive an otherwise valid

FOIA exemption. *See Mobil Oil Corp. v. EPA*, 879 F.2d 698, 700 (9th Cir.1989); *Afshar v. Department of State*, 702 F.2d 1125, 1133 (D.C.Cir.1983); *Mehl v. EPA*, 797 F.Supp. 43, 47 (D.D.C.1992). "The existence and scope of a waiver depends upon the scope of the disclosure." *Mehl*, 797 F.Supp. at 47. Plaintiffs asserting waiver of an applicable FOIA exemption generally are required to show " 'that the withheld information has already been *specifically* revealed to the public and that it appears to *duplicate* that being withheld.' " *Mobil*, 879 F.2d at 701 (emphasis in original); *Mehl*, 797 F.Supp. at 47; *United States Student Ass'n v. CIA*, 620 F.Supp. 565, 571 (D.D.C.1985); *see also Public Citizen*, 11 F.3d at 201 (plaintiff bears initial burden of "pointing to specific information in the public domain that duplicates that being withheld," and that burden is not met by "simply show[ing] that similar information in the public domain has been released"). Specificity is the touchstone in the waiver inquiry, and thus, neither general discussions of topics nor partial disclosures of information constitute waiver of an otherwise valid FOIA exemption. *Public Citizen v. Department of State*, 787 F.Supp. 12, 14 (D.D.C.1992), *aff'd*, 11 F.3d 198 (D.C.Cir.1993); *Mehl*, 797 F.Supp. at 47.

■ Plaintiffs claim that the statements made at the Press Conference waived Exemption 7(A) as to substantial portions of the facts and conclusions contained in the Reports. According to plaintiffs, the FBI and Park Police officials provided specific facts about each agency's findings at the Press Conference. *In camera* review, plaintiffs maintain, is required to determine which of the facts and conclusions disclosed at the Press Conference are contained in the Reports.

As plaintiffs point out, the standard for deciding whether *in camera* review is appropriate depends on whether it is for purposes of determining if a particular FOIA exemption applies or whether it is for purposes of assessing if an applicable FOIA exemption has been waived. *In camera* review is the exception, and not the rule, when the plaintiff seeks such review merely to determine if a claimed exemption applies. *See Local 3,*

*I.B.E.W. AFL–CIO v. National Labor Relations Board*, 845 F.2d 1177 (2d Cir.1988) (*in camera* review unnecessary because agency's detailed affidavit was sufficient to provide basis for court's ruling that documents were exempt from disclosure under Exemption 6 and Exemption 5); *Doherty v. United States Department of Justice*, 775 F.2d 49, 52–53 (2d Cir.1985) (district court "should restrain its discretion to order *in camera* review" where the "Government's affidavits on their face indicate that the documents withheld logically fall within the claimed exemption and there is no doubt as to agency good faith"). In contrast, courts are more likely to conduct *in camera* review in those cases where the plaintiff asserts that an otherwise applicable FOIA exemption has been waived. *E.g., Public Citizen v. Department of State*, 782 F.Supp. 144 at 145 (D.D.C.1992); *see also Mobil*, 879 F.2d at 702–04 (appears that appellate court, if not district court, reviewed the contested documents).

Originally, plaintiffs sought *in camera* review of both the Park Police Report and the FBI Report. DOJ's disclosure of 91 pages of the Park Police Report, along with Independent Counsel Fiske's and Independent Counsel Starr's statements that the portions of the Park Police Report dealing with Mr. Foster's death have been released and that only those portions dealing with the still ongoing investigations have been retained, renders *in camera* review of this Report needless. Plaintiffs nevertheless urge that I conduct *in camera* review of the FBI Report, which covers the investigation of the handling of documents in Mr. Foster's White House office immediately following his death. I decline to do so. In light of Independent Counsel Starr's declaration that further disclosure of the Reports would interfere with his investigation of the handling of Mr. Foster's papers, I need not conduct *in camera* review to find, as I do find, that the FBI Report falls squarely within Exemption 7(A). Moreover, I find that plaintiff has not set forth a sufficient, specific prima facie case that the limited, general and cursory discussions during the Press Conference of the White House handling of the Foster papers

constituted a waiver of the 7(A) Exemption.[1] Therefore, I find no reasonable basis to conclude that an *in camera* review of the Reports is necessary.

## II. *Exemption 7(C)*

█ Although DOJ has released a transcript of the Note, and made a photocopy of the Note available for viewing in DOJ's Washington, D.C. offices, DOJ seeks to withhold the Note under Exemption 7(C), which protects "records or information compiled for law enforcement purposes . . . to the extent that the[ir] production . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." DOJ claims that the Foster family's privacy interests outweigh any incremental public interest that would be served by disclosure of the Note, and thus, summary judgment that the Note is exempt from disclosure under Exemption 7(C) is warranted. DOJ has submitted the declaration of Mr. Foster's widow and Acting Associate Attorney General William Bryson in support of its motion for summary judgment on the Exemption 7(C) issue.

█ Exemption 7(C) "reflects Congress' desire to preserve confidentiality and personal privacy." *Hale v. United States Dep't of Justice*, 973 F.2d 894, 900 (10th Cir.1992). Exemption 7(C) is, therefore, applicable only if the invasion of privacy that would result from release of the information outweighs the public interest in disclosure. *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762, 109 S.Ct. 1468, 1476, 103 L.Ed.2d 774 (1989).

The public has a substantial interest in viewing the Note. The matters discussed in the Note touched on several events of public interest, including the controversy involving the White House travel office, and implicated government agencies and employees in mis-

conduct. Stip. Facts. ¶ 40. However, the public not only has an interest in the contents of the Note but also in viewing a photocopy of the actual document. According to statements made at the Press Conference, the Note was torn up by someone, and some of the pieces are missing. Stip. Facts ¶ 54. The missing pieces, the "look" of the handwriting, and the significance to be drawn therefrom, are, as plaintiffs note, matters of public concern. DOJ itself has implicitly recognized the public interest by making a photocopy of the Note available for viewing. I disagree with DOJ's assertion that it has fulfilled its duty to the public by making the Note available for viewing in its Washington, D.C. office. Interested persons should not be required to make a time-consuming and costly trip to the capitol in order to view the Note.

I do not doubt that making photocopies of the Note available on a wider scale may spark a new round of media attention toward the Foster family, and I sympathize with them for the pain they will bear as a result of any renewed scrutiny. I am not convinced, however, that any such renewed interest will be so substantial as to outweigh the important public interest in viewing the Note.

For its contention that the Note falls within Exemption 7(C), DOJ relies on *New York Times v. NASA*, 782 F.Supp. 628 (D.D.C. 1991), which held that the audiotape of Challenger astronauts recorded immediately before their death was exempt from disclosure, even though NASA had published a transcript of the tape, since "[e]xposure to the voice of a beloved family member immediately prior to that family member's death" would cause Challenger families great pain and would not contribute to the public's understanding of the operations of government. In both the present case and *New York Times*, the relevant government agency pro-

---

1. Plaintiffs attempt to bolster their contention that DOJ waived Exemption 7(A) for the FBI Report by presenting a line-by-line comparison of released sections of the Park Police Report juxtaposed to statements made during the Press Conference, and arguing that DOJ's disclosures of the Park Police Report at the Press Conference in fact waived the 7(A) Exemption. This argument is unconvincing. I am not persuaded that DOJ waived the FOIA Exemption 7(A) for the

Park Police Report. Although some of the statements made during the Press Conference are similar to information contained in the Report, I do not find the level of specificity of statements made at the Press Conference necessary to constitute waiver. *See Mobil*, 879 F.2d at 701. Nor do I find, as plaintiff alleged during oral argument, that statements made during the Press Conference "tracked" the Park Police Report.

duced a transcript of the deceased's words, and thereby claimed that the original—the audiotape in *New York Times* and the Note in the present case—is exempt from production. This case is distinguishable from *New York Times*, however, because the Foster family's privacy interest in the Note is weaker than the deceased Challenger astronauts' families' interest in the audiotape, and because the public interest in disclosure of the Note is stronger than it was in the audiotape. In *New York Times*, the court held that "*how* the astronauts said what they did, the very sound of the astronauts' words" was such an "intimate detail" that their families could protect the tape from disclosure. *New York Times*, 782 F.Supp. at 631. Although Mr. Foster's suicide note may have been intensely personal, the written word is qualitatively different from an audio recording of the last words of the astronauts. As for the public interest in disclosure, the *New York Times* court found that the background noises and voice inflections contained in the tape would not " 'contribute significantly to public understanding of the operations or activities of the government," the purpose underlying FOIA. *New York Times*, 782 F.Supp. at 632 (quoting *United States Dep't of Justice v. Reporters Comm.*, 489 U.S. 749, 775, 109 S.Ct. 1468, 1482, 103 L.Ed.2d 774 (1989)). In the present case, however, the missing pieces of the Note, and therefore the physical look of the Note, are an integral part of the public's interest.

Nor is DOJ's position for nondisclosure supported by *Katz v. National Archives & Records Administration*, 862 F.Supp. 476 (D.D.C.1994) (privacy interests of Kennedy family outweighed public interest in autopsy reports despite prior unauthorized disclosure of photographs of x-rays contained in the autopsy). This is not a case of partial disclosure or unauthorized prior disclosure of withheld documents.

DOJ has not met its burden of demonstrating that Exemption 7(C) applies to the Note, and its motion for summary judgment on this ground is denied and plaintiffs' cross-motion for summary judgment enjoining DOJ from withholding the Note is granted.

## CONCLUSION

For the reasons discussed above, defendant's cross-motion for summary judgment pursuant to Fed.R.Civ.P. 56 to dismiss those portions of the Complaint addressed to the disclosure of the Park Police and FBI Reports is granted. Plaintiffs' motion for summary judgment is partially granted in that the Department of Justice is enjoined from withholding circulation of copies of the Foster "Note." The Clerk of the Court is directed to enter judgment on the Complaint in accordance with this Opinion.

**SO ORDERED.**