# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

No. 24-5083

September Term, 2024

FILED ON: FEBRUARY 11, 2025

KEN MCWATTERS,
              APPELLANT

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,
              APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-01092)

Before: RAO and WALKER, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

## J U D G M E N T

The Court considered this appeal on the record from the United States District Court for the District of Columbia and on the briefs of the parties. *See* Fed. R. App. P. 34(a)(2); D.C. Cir. R. 34(j). For the reasons stated below, it is

**ORDERED AND ADJUDGED** that the order of the district court, filed on February 20, 2024, be affirmed.

## I.      Background

Appellant Ken McWatters brought an action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, requesting the release of an audio record in the control of the appellee, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). That audio recording captured the sounds from a February 20, 2003 fire at a nightclub in which 100 people perished. The nightclub fire occurred during a concert for the band Great White after the band's manager ignited a pyrotechnical device on stage.

The ATF took custody of the recording at issue during its investigation of the nightclub fire. The recording "was recovered from a body of a deceased male victim." According to the ATF's

assessment, it is approximately thirty minutes long and can be divided into three parts. The first portion captures the introduction of Great White and the start of the band's performance. The second portion begins with an unidentified individual yelling "Fire!" followed by sounds of "panicking, screaming, and chaos" and eventually "sounds of human suffering." This portion also records the attendee's "last breaths and his struggle to stay alive." The final portion of the recording does not depict any "audible human sounds."

McWatters submitted his request on May 6, 2014, after which the ATF conducted a search that turned up only the recording McWatters identified. The ATF decided to withhold the recording pursuant to FOIA Exemptions 6 and 7(C). 5 U.S.C. §§ 552(b)(6), (b)(7)(C). FOIA Exemption 6 permits the withholding of "personnel and . . . similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," and FOIA Exemption 7(C) permits the withholding of law-enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." McWatters subsequently brought this lawsuit, resulting in cross-motions for summary judgment.

In a declaration submitted with the ATF's motion for summary judgment, the Chief of the Information and Privacy Governance Division of the agency explained that the ATF withheld the recording because its disclosure "could cause living family members of the deceased victims to suffer emotional distress unnecessarily." The ATF's declarant specifically identified "the surviving family members of the deceased male victim who created the recording, which, all-too-tragically, captures the final moments of his life." He also stated that the early portions of the disputed recording depict the voices of the lead guitarist of Great White and a local disc jockey, meaning that "release of even the early portions of the recording might result in unnecessary and unwarranted emotional distress for the families" of those individuals. The ATF accordingly withheld the record in full because it determined there "were no reasonably segregable, non-exempt portions of the responsive record."

The district court granted summary judgment to the ATF as to the first two parts of the audio recording, holding that "the families of the many victims heard on the recording, including members of Great White and the attendee who made the recording, have a significant privacy interest in nondisclosure" and that McWatters failed to assert a countervailing public interest in disclosure. *McWatters v. Bureau of Alcohol, Tobacco, Firearms & Explosives* (*McWatters I*), No. 20-cv-1092, 2022 WL 3355798, at *4 (D.D.C. Aug. 15, 2022). It denied summary judgment as to the last portion of the audio recording and remanded the case to the agency to determine whether that portion was reasonably segregable and therefore should be released.

After another review of the recording, the ATF determined that a segment of the final portion of the audio tape contained human sounds, so it withheld that segment and released the remainder. The parties renewed their cross-motions for summary judgment and McWatters also moved for reconsideration of the district court's first opinion. The district court granted the ATF's renewed motion and denied McWatters's motions for reasons that mirrored those explained in the district court's first opinion. *McWatters v. Bureau of Alcohol, Tobacco, Firearms & Explosives* (*McWatters II*), No. 20-CV-1092, 2024 WL 687966 (D.D.C. Feb. 20, 2024). McWatters now appeals.

2

## II.  Analysis

McWatters argues the entire audio tape should be disclosed because the ATF cannot establish a privacy interest under Exemption 7(C) in any portion of the audio tape.[1] He further argues that even if this court finds the ATF established a privacy interest in withholding the records, this court still should reverse the district court because there is a sufficiently large public interest in disclosure. Finally, he contends that this court should at least order the release of all reasonably segregable, non-exempt portions of the audio tape.

We review the district court's grant of summary judgment de novo. *Kowal v. DOJ*, 107 F.4th 1018, 1027 (D.C. Cir. 2024). "When reviewing an agency's reliance on Exemption 7(C), we must balance the privacy interests involved against the public interest in disclosure." *Id.* at 1030 (cleaned up). This showing is often made by an affidavit, which must "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and . . . not [be] controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009); *Judicial Watch, Inc. v. DOD*, 715 F.3d 937, 941 (D.C. Cir. 2013) (explaining that "an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible" (cleaned up)). Additionally, "[a]ny reasonably segregable portion of a record shall" be disclosed "after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

The "FOIA recognizes surviving family members' right to personal privacy with respect to their close relative's death-scene images." *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 170 (2004). That right extends to a family member's "personal stake in honoring and mourning their dead and objecting to unwarranted public exploitation," *id.* at 168, and to a "family member who objects to the disclosure of graphic details surrounding their relative's death," *id.* at 171 (cleaned up).

Based upon the ATF's affidavit, we conclude that the ATF has made a sufficient showing that the disclosure of the audio tape would invade the privacy interests of family members of those who perished in the nightclub fire. The ATF's declarant logically explained that disclosure of the recording could harm the privacy interests of the living family members of the deceased victims, and in particular, the living family members of the person who made the recording and of the individual voices identified at the beginning of the recording. The recording captures the male victim's "last breaths and his struggle to stay alive," App. 38, disclosure of which could reveal the "graphic details surrounding their relative's death." *Favish*, 541 U.S. at 171. Disclosure of the voices of the lead guitarist and local disc jockey could cause the same harms, even though their

---

[1] As there is no dispute that the audio record was compiled for law enforcement purposes, we have "no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." *Roth v. DOJ*, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

3

voices are depicted prior to the fire. *See New York Times Co v. NASA*, 782 F. Supp. 628, 631 (D.D.C. 1991) (recognizing a survivor privacy interest in "technical and non-personal" audio recording of the crash of the Challenger space shuttle); *Favish*, 541 U.S. at 170–71 (citing *New York Times Co.*).

McWatters disputes that the contents of the recording establish a cognizable privacy interest. He argues that the sounds of human suffering in the second portion of the recording cannot reliably be traced to any identifiable person and offers an expert declaration supporting this claim. The cases he cites do not support such a requirement. The focus of two of those cases is upon the meaning of "personnel and . . . similar files" under Exemption 6. *U.S. Dep't of State v. Wash. Post Co.,* 456 U.S 595, 598, 602 n.4 (1982); *New York Times Co. v. NASA*, 920 F.2d 1002, 1006–07 (D.C. Cir 1990). They do not discuss the scope of the privacy interest at stake under the more agency-friendly Exemption 7(C). *See ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011) (explaining that Exemption 7(C) "establishes a lower bar for withholding material" than does Exemption 6). The third case McWatters cites also focuses upon the more exacting Exemption 6, analyzing whether disclosure of records in which all identifying information is redacted "would" invade a privacy interest. *Arieff v. U.S. Department of the Navy*, 712 F.2d 1462, 1466–68 (D.C. Cir. 1983). Moreover, it is undisputed that the audio recording "was recovered from a body of a deceased male victim" and that the recording depicts a person's last breaths. Based upon these facts, McWatters cannot genuinely dispute that the most likely individual making these sounds is the deceased male victim that made the recording. McWatters's arguments, then, do not create a genuine dispute of material fact as to whether the families of those who perished in the nightclub fire — and, at the very least, the family of the male victim — "could" suffer an invasion of privacy from disclosure of the recording. 5 U.S.C. § 552(b)(7)(C).

Because the ATF has demonstrated a privacy interest in withholding the recording, McWatters must demonstrate that the public interest in disclosure outweighs the privacy interest. *Kowal*, 107 F.4th at 1030. McWatters must demonstrate that the asserted public interest is "a significant one, an interest more specific than having the information for its own sake, and that the information is likely to advance that interest." *Elec. Priv. Info. Ctr. v. DOJ*, 18 F.4th 712, 718 (D.C. Cir. 2021) (cleaned up) (referring to *Favish*, 541 U.S. at 172). For the reasons stated by the district court, he has not done so. *McWatters I*, 2022 WL 3355798, at *4; *McWatters II*, 2024 WL 687966, at *5–6; *see also Kowal*, 107 F.4th at 1031 ("Where there is no identifiable public interest, the privacy interest protected by Exemption 7(C) prevails because something, even a modest privacy interest, outweighs nothing every time" (cleaned up)). The ATF therefore demonstrated that the audio recording is exempt from disclosure.

The ATF has also adequately demonstrated that there are no non-exempt portions of audio that are reasonably segregable. McWatters argues that the audio from before the fire started is "not a privacy harm at all," and therefore should be released**.** As described above, the district court's 1991 decision in *New York Times Co.*, which the Supreme Court has cited favorably, contradicts this argument. *See New York Times Co.*, 782 F. Supp. at 631; *Favish*, 541 U.S. at 170–71 (citing *New York Times Co.*). Moreover, redacting the recording to "screen out any specific human sounds," as McWatters suggests, would not eliminate the anguish to surviving family members caused by disclosing a recording from the moments surrounding the death scene. The ATF's

affidavit makes clear that the entire recording is "inextricably intertwined" with the privacy interests of the surviving family members. *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020). For these reasons, the district court did not err when it granted the ATF's motion for summary judgment.

*     *     *

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

<strong><u>Per Curiam</u></strong>

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:    /s/
Daniel J. Reidy
Deputy Clerk