**Robert S. COOPER, Jr.,
Plaintiff-Appellant,**

v.

**The DEPARTMENT OF the NAVY OF
the UNITED STATES,
Defendant-Appellee.**

**No. 75–3100.**

United States Court of Appeals,
Fifth Circuit.

May 7, 1979.

Edward P. Sutherland, Baton Rouge, La., for plaintiff-appellant.

Douglas Gonzales, Donald L. Beckner, U. S. Atty., Baton Rouge, La., Thomas G. Wilson, Leonard Schaitman, Appellate Sec., Civil Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

## ON PETITION FOR REHEARING

Before WISDOM, GEE and FAY, Circuit Judges.

GEE, Circuit Judge:

This cause concerns an attempt by counsel representing the survivors of one killed in the crash of a Marine Corps helicopter to obtain access via the Freedom of Information Act to reports of certain investigations of the accident.

Our initial opinion, reported at 558 F.2d 274, details the facts and progress of the case and contains the following observations, to which we adhere:

Finally, Appellee argues that whatever privilege might exist for the AAR has been waived by a regulation providing that a copy of it is to be forwarded "to the Naval Plant Representative Office at the factory at which the aircraft was manufactured." Since the AAR is thus "routinely furnished to aircraft manufacturers," Appellant claims, it is entitled to no protection. But appellant misapprehends the effect of the regulation; the personnel in the Representative Office are employees of the Navy, not of the manufacturer. And though other regulations do permit a limited access to the AAR by manufacturer's technical representatives on a "need-to-know" basis, it is the law of this circuit that such limited disclosures to proper outside persons as are necessary to carry out effectively a purpose for assembling a governmental report in the first place do not waive its privilege. *Overby v. United States Fidelity & Guaranty Co.,* 224 F.2d 158 (5th Cir. 1955). Doubtless a broadcast disclosure

would be another matter, but we are unable to see reason in holding that a limited and proper use of the report for accident prevention purposes should work destruction of the confidentiality promised in assembling it and permit its use for the very purposes those whose disclosures made it possible were promised it would not be used for. Such a rule, where the AAR revealed possible defects in the aircraft as manufactured, would allow the Navy a Hobson's Choice, between no *use* of the AAR or no AAR. Matters are not yet at such a stage.

558 F.2d at 278 (footnotes omitted, emphasis original).

Plaintiff Cooper asserted on rehearing that distribution of one of the reports sought, the AAR, was indeed made broadcast in this case rather than as indicated in the affidavit of Secretary of the Navy Middendorf. In response to this assertion, we remanded for a determination of to whom the report had gone and the legal effect of that distribution.

The district court permitted additional discovery, which revealed that part of the AAR in question had indeed received wider distribution than had been indicated by the former record. Specifically, the court found and concluded as follows:

A review of all of the testimony leads this Court to the conclusion that in this case, and very probably in many other cases, there has been a distribution of AAR's to people other than those authorized by Navy regulations to see them. Whether it results from negligence, or from voluntary and knowing acts on the part of Navy personnel, the fact remains that the release of these reports to persons other than those authorized by Navy regulations can be traced directly to the Department of the Navy. While the Navy field representative at the Sikorsky plant apparently had the authority to obtain the AAR, access to the report did not stop there. It went to people not primarily concerned with aircraft safety, but instead concerned with litigation result-

ing from an accident. Capt. DeVoe, Mr. Harms, Attorney Arnold, and Attorney Gaines, together with unnamed insurance company personnel, and probably other attorneys, had access to all or parts of this AAR. In addition, it is important to note that both Capt. Husted and Lt. Commander Lindberg testified that copies of AAR's and endorsements were knowingly distributed to commands and officers not specifically authorized by Navy regulations to receive them. Indeed, the Navy plant representative at Sikorsky was not specifically authorized by regulations to receive the report, but it was apparently regular procedure to make these reports available to him. Thus, the Navy did not adhere to its own regulations pertaining to the dissemination of information contained in these AAR's and should now be held to have waived the exemption which it might have had under the Freedom of Information Act insofar as this particular report is concerned. The Navy Department simply cannot permit these reports to be available to some people, who are not authorized under its own regulations, to have them, and then deny the same privilege to others. In this case it would be grossly unfair to permit this report to be available to defense counsel and to insurance company personnel, and at the same time deny plaintiff and his client access to it. This Court concludes that in this case, the defendant has waived any right that it might otherwise have had under the provisions of 5 U.S.C. § 552(b)(5) to withhold the AAR in question from the plaintiff.

## Our Standard of Review

■ Among the curious features of this unusual case has been that the most telling presentation by each advocate has come at an eleventh hour. As we have noted above, it was a motion for rehearing by Mr. Cooper that launched us on this phase of the case. Now the force of the Navy's brief attacking the findings and conclusions of the district court has required us to scrutinize with great care the evidence relied on below to support them. This evidence consisted of four depositions, the court hearing no live witnesses. In these circumstances, though our review of these factual findings is governed as usual by the clearly-erroneous standard, the burden of establishing clear error is not so heavy as in the normal case. *Volkswagen of America, Inc. v. Jahre,* 472 F.2d 557 (5th Cir. 1973). This follows since we view precisely the same evidence as did the trial judge, from the same vantage point, neither tribunal being aided by those advantages in assessing witness credibility that flow from observing demeanor, reactions, and manner of testifying.

## The Evidence on Remand

Of the four depositions, perhaps the most revealing is that of Augustus DeVoe, a retired Navy Captain and highly-placed flight safety engineer for Sikorsky Aircraft, the helicopter's manufacturer. Captain DeVoe's testimony makes clear that the great body of his work consists of investigating accidents and coordinating the resulting information for counsel defending lawsuits brought against Sikorsky. His job also requires some design and operational safety work, but he candidly described these facets of it as "part time," with the major emphasis on litigation-related concerns.

He also candidly admitted having had possession of the fourth endorsement to the AAR in this case. As the record reveals and as, doubtless, is a matter of common knowledge, the military services employ the device of "endorsements" on reports and correspondence as they pass up the chain of command. Among the offices of these is to offer each command level an opportunity to state agreement, disagreement or reservations about the document's conclusions as it makes its way up the chain.

The endorsement which came into Captain DeVoe's hands consisted of the comments on this AAR of the Commanding General, Marine Fleet Force, Atlantic. We have read this endorsement with care—no very taxing task, since shorn of formal matter it contains less than 400 words. Aside from general observations about the impor-

tance of observing safety measures and procedures and maintaining proper command supervision, the endorsement broadly approves the AAR and observes that the accident was apparently the result of pilot error. The inference is strong that this was also a general conclusion of the AAR, but this is not certain from the endorsement. What its other general conclusions, if any, were remains undisclosed. Nothing can be told from the endorsement about detailed findings or conclusions of the AAR, assuming there were such.

Captain DeVoe testified further that he had seen AARs at various times but had not had possession of one since twenty years or so ago when, he testified, "[t]hings were a lot looser." He recalled having seen substantially all of one Navy AAR only in the last five years, one which was produced in connection with another lawsuit. As for the fourth endorsement, he did not remember where he got it—though he claimed it was not from the Navy Plant Representative Officer (NAVPRO) at Sikorsky—but he was sure he sent it on to company defense counsel, a manifest impropriety.

As for the basic AAR itself in this case, as distinguished from its endorsements, DeVoe did not believe he had ever seen it, though he admitted this was a possibility. He also admitted to having general personal access to the AARs on file in the office of the NAVPRO at Sikorsky, though this included only reading them "on the spot," any notes taken being required to be censored to remove names, places, etc.

Another deponent in this case was Mr. William F. Harms, the product liability representative of Sikorsky's parent corporation. His job is to coordinate the defense of such claims as appellant Cooper's. He testified that he had seen the fourth and possibly another endorsement, but not the body of this AAR. He thought he had gotten it from Captain DeVoe and that he passed it on to Sikorsky attorneys. He disclaimed ever having seen so much as significant portions of a Navy AAR, let alone an entire one.

Navy witnesses testified to an investigation conducted by them to determine how the fourth endorsement came into DeVoe's hands. As a result of this they had concluded that no authorized release of the fourth endorsement was made, that no other portion of the AAR had been disclosed so far as they could tell, and that they could not determine with any certainty who sent the endorsement to DeVoe. From certain codes on the document they suspected, however, that the endorsement came from headquarters of the Commander, Naval Air Force, Atlantic Fleet.

*Waiver as to the Fourth Endorsement*

Thus, to summarize, these depositions suggest that Captain DeVoe, a civilian expert with Sikorsky primarily concerned with litigation investigation and defense, obtained the fourth endorsement to this AAR from some anomalous source within the Navy (or perhaps from the office of the Sikorsky NAVPRO) and gave it to Sikorsky defense counsel. And though this release was not directly authorized by the Navy, it also appears that DeVoe had general authorized access to the body of AARs in the office of the NAVPRO at the Sikorsky plant, though he was not permitted unsupervised possession of them and was supposed to omit names, places, etc. from his notes about them.[1] We think these circumstances support the findings and conclusions

---

1. At the relevant times, release of matter such as the AAR to NAVPROs and manufacturer's technical representatives was governed by OP-NAVINST 3750.6J, § 902(g), reading in pertinent part:

   g. Release of Information to Technical Representatives and Contractors.

   (1) Accredited manufacturers' representatives and technical representatives cleared through the Naval Air Systems Command will be given access to the records of aircraft mishaps and statistics within the Naval Safety Center at the discretion of the Commander, Naval Safety Center. Reports, or those sections of reports, involving Navy policy and/or command matters will not be made available for their review; however, extracts of these reports, or sections of reports which pertain to material and design may be provided the manufacturers' representatives at the discretion of the Commander, Naval Safety Center.

of the district court as to the fourth endorsement to the AAR sufficiently that they are not clearly erroneous.

It is intolerable that such confidential documents should be furnished to one side of a lawsuit and not to the other. To be sure, an unauthorized filching of the document would not in the normal course operate as a waiver of the Navy's right to withhold it. But where, as here, a company representative primarily concerned with litigation is, pursuant to wearing his "other hat"—a subsidiary responsibility for aircraft design and operational safety, permitted general access to guarded matter and a copy of it appears in defense counsel's hands, a determination that its confidentiality has been waived is not clearly wrong. True, as we made plain in our original opinion, the savings in lives and property which the AAR process has produced justify guarding the confidential procedures by which such reports are assembled. But, like rank, privileges such as these carry corresponding responsibilities, and we concur in the district court's refusal to permit them to be trifled with as they were here. The Navy's privilege to withhold this endorsement was properly held to have been waived.

### No Waiver as to the Remainder

■ The case is otherwise, however, as to the body of the AAR and its other endorsements. There is little or no evidence in this record that the confidentiality of these has been compromised at all, let alone by authority of the Navy. No one admits to having misused them or to furnishing them to the defense. Even Captain DeVoe could not be sure he had seen them. No one testified that they were furnished to any unauthorized person, nor have they been found in any such hands. The fourth endorsement does not disclose them, though the conjectures it permits about their general tenor are now as available to the plaintiff as to the defense. This endorsement is merely the general, the very general, comments of one command level upon them. Its form is that of a separate message. We do not concur in the district court's conclusions that possession of it indicates possession of the entire AAR.

It follows that no evidence—only conjecture and suspicion, which we confess we share—supports a finding or conclusion that their confidentiality has been breached or their privileged character under the FOIA waived. This does not suffice, and the district court's determination that they have been is clearly erroneous. The fourth endorsement's confidentiality has been waived and it must be disclosed; that of the remainder of the AAR has not been, on the present showing, and it need not be.[2] To

---

(2) Naval Plant Representative Officers (NAVPRO) will retain physical custody of all official written reports of investigations of aircraft mishaps. They should permit manufacturers and/or technical representatives to review and study the reports after they have been screened and controversial endorsements and/or command matters have been removed, but will not permit the latter to reproduce any portion thereof. NAVPRO may furnish summaries or extracts of factual technical information from the mishap reports pertaining to matters of design or performance, but with the complete understanding that all such information furnished will be used solely for the purpose of product improvement or accident prevention.

Thus it appears that while wearing his flying safety hat Captain DeVoe was entitled to a limited access to AARs via either of the above methods. Neither seems to have properly applied in this case; and even had they been so applied, serious questions are raised by DeVoe's dual status. The fourth endorsement may have come into his hands either from an anomalous Navy source or from the Sikorsky NAVPRO; there is no indication whatever that it came from the Naval Safety Center via the discretion of its Commander. If the former, regulations were manifestly violated. If the latter, they were breached in several less-blatant ways: by giving him physical custody of the endorsement; by permitting him to see this endorsement—clearly a "controversial endorsement and/or command matter"—at all; by permitting him to reproduce it; and by the use that he made of it.

2. We wish to make clear that we do not lack a considerable general sympathy with the district court's disposition on remand. The depositions taken leave grounds to suspect an all-too-cozy, "old-boy" relationship between Sikorsky employee DeVoe and contacts in the Navy, a rela-

the above extent only, rehearing is granted and the mandate of the court is modified as indicated; it is otherwise DENIED.

tionship redounding to the unfair advantage of Sikorsky's defense counsel. Moreover, as we observed in footnote 1 above, the manner in which DeVoe—basically a legal investigator— seems to have been granted general access to the AARs of the Sikorsky NAVPRO either was not in compliance with Navy Regulations or raises grave questions about the propriety and fairness of the regulations themselves, as applied in ·practice. We hold no general warrant or roving commission to advise or caution the Navy. We do observe, however, that the loose practices apparent in this case very nearly compromised this AAR. If they should be widespread, they risk the effective destruction of the AAR program, for we cannot and will not tolerate its being run as an exclusive investigative device for either side of a lawsuit.