**Lawrence R. MEHL, Plaintiff,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Defendant.**

**Civ. A. No. 90–1377 SSH.**

United States District Court, District of Columbia.

Aug. 26, 1992.

John Patrick Dean, Willkie, Farr & Gallagher, Washington, D.C., for plaintiff.

Asst. U.S. Attys., Nathan Dodell, Fred E. Haynes, Washington, D.C., for defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

This is an action pursuant to the Freedom of Information Act (FOIA), 5 U.S.C.A. § 552 (1977 & Supp.1991). Before the Court are plaintiff's motion for partial summary judgment and defendant's motion for summary judgment. After careful consideration of the entire record and an *in camera* inspection of the documents at issue, the Court denies plaintiff's motion, grants defendant's motion in part, and denies defendant's motion in part.

Plaintiff seeks documents relating to the Environmental Protection Agency's (EPA) cleanup efforts at the Bunker Hill hazardous waste site in Idaho.[1] Plaintiff is the Vice President, General Counsel, and Secre-

---

1. The Bunker Hill site consists of approximately 21 square miles in the Silver Valley of Northern Idaho. It contains a lead and zinc mine, a smelter complex, and a central impoundment area. The central impoundment area, which was created in 1928 to contain mine tailings, encompasses 160 acres and contains hazardous waste up to 70 feet deep. The area of the site includes 4 towns with a total population of about 5,000 people. The EPA placed the Bunker Hill site on the National Priorities List in September 1983.

tary of Gulf Resources and Chemical Corporation (Gulf), which at one time owned the site.[2] On March 9, 1990, plaintiff sent identical FOIA requests to the EPA headquarters and to EPA Region 10, requesting documents mentioned in an EPA report regarding the site. The EPA identified and released a number of responsive documents and withheld portions of five documents. Plaintiff seeks access to the withheld portions of the documents.

### Background

On February 26, 1990, the Inspector General (IG) of the EPA publicly released a report entitled "Special Review of EPA's Handling of the Bunker Hill Superfund Site" (Report).[3] The Report summarizes the IG's investigation into allegations that the EPA's Regional Administrator interfered with the routine enforcement actions of the EPA's Hazardous Waste Division (HWD) regarding the Bunker Hill site. The Report states that the Regional Administrator blocked or delayed enforcement actions against the current owner of the site, Bunker Limited Partnership (BLP), and that the delay had serious consequences on the condition of the site and the likelihood of recovery from BLP.

The Report refers to a number of documents regarding the Bunker Hill site and the EPA's enforcement strategy there. Specifically, the Report identifies a "background paper," an "option paper," and an "ownership report." In his FOIA request, plaintiff requested those documents and other documents containing information discussed in the Report. The EPA located the three named documents and two additional documents, a "notice letter memo" and an "executive summary" of the option paper. The EPA released copies of the five documents with redactions. It withheld portions of the documents under FOIA exemptions 5 and 7. Plaintiff contends that the EPA waived any applicable exemptions for the five documents through public disclosure in the Report. Plaintiff also challenges the adequacy of the EPA's search in response to his requests.

### Discussion

#### I. Search Issues

■ Pursuant to the FOIA, the EPA must establish "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Department of the Army*, 920 F.2d 57, 68 (D.C.Cir.1990); *see Weisberg v. Department of Justice*, 745 F.2d 1476, 1485 (D.C.Cir.1984). To meet that standard, the EPA "may rely upon reasonably detailed, nonconclusory affidavits." *Weisberg*, 745 F.2d at 1485. The affidavits must outline the method utilized in searching for responsive documents and they must reflect a systematic approach to the search. *See Oglesby*, 920 F.2d at 68.

■ To establish the adequacy of its search, the EPA submitted the affidavit and the supplemental affidavit of Allan B. Bakalian, the declaration of John C. Jones, and the declaration of Joseph E. Tieger.[4] The affidavits establish that the EPA's search of its records at EPA headquarters was adequate. *See Perry v. Block*, 684

---

2. In 1984, the EPA identified Gulf as a "potentially responsible party" (PRP) for the costs of cleanup at the Bunker Hill site under the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), 42 U.S.C.A. § 9601 *et seq.* The EPA apparently did not identify other PRPs, although Gulf requested that it do so.

3. The Report is dated January 30, 1990. It describes the background of the Bunker Hill site and the EPA's efforts to clean up the site. The Report also describes the IG's investigation of the enforcement actions and his findings.

4. Plaintiff raised the search issue in opposition to defendant's motion for summary judgment. Defendant apparently did not realize that the adequacy of the search was at issue. Defendant submitted the affidavit of Allan B. Bakalian, Assistant Regional Counsel for EPA Region 10, Hazardous Waste Law Division. Bakalian's affidavit describes the search in response to plaintiff's request to Region 10. Plaintiff then noted that the Bakalian affidavit does not address the search of EPA headquarters' files. The EPA thereafter submitted a supplemental Bakalian affidavit and the declarations of Joseph E. Tieger and John C. Jones to complete the record on the search issue.

F.2d 121, 126 (D.C.Cir.1982). Tieger, the Region 10 Coordinator for the EPA, states that he personally reviewed all CERCLA Enforcement Division "site and reading files" for responsive materials. Tieger further states that he coordinated his search with the former Division Director and with his predecessor to locate files that might contain responsive documents. Those assertions are sufficient to establish that the search was reasonably calculated to locate any responsive documents within the EPA Headquarters' files. *See id.*

■ The EPA's affidavits do not establish the adequacy of the search conducted by the Region 10 office. The Bakalian affidavits, which address the search of that office's records, do not provide a description of the search. Instead, Bakalian asserts that he has "firsthand knowledge of the Bunker Hill case files" through his four-year involvement with the EPA's cleanup efforts and its responses to other FOIA requests. Bakalian refers to the use of a contractor to search for responsive records, but he does not explain how the contractor conducted the search. Although Bakalian's firsthand knowledge of the Bunker Hill files suggests that he is the appropriate person to supervise a search, it does not establish that the method of the search was reasonably calculated to uncover responsive materials. *See Oglesby,* 920 F.2d at 68 (comparing affidavits submitted by two agencies). Therefore, the defendant must submit an additional affidavit that describes the method used to search for documents in the Region 10 office's files.[5]

■ Plaintiff argues that a factual issue exists regarding the adequacy of the EPA's search for the "option paper." The Report states that the option paper initially contained a recommendation in favor of naming certain PRPs for the Bunker Hill site.

According to the Report, the Regional Administrator objected to the recommendation and deleted it from the option paper. In responding to plaintiff's request, the EPA released a redacted version of the option paper. That version does not reflect any recommendations. The Bakalian affidavits state that the EPA's search did not locate a version of the option paper that contains a recommendation in favor of naming PRPs. Bakalian's affidavit further states, based on personal knowledge, that the option paper never contained such a recommendation and that the description in the Report was mistaken.[6] Plaintiff contends that the discrepancy between the EPA's affidavit and the Report creates a genuine issue of material fact. Therefore, he argues, he is entitled to discovery regarding the adequacy of the EPA's search and the existence of an original version of the option paper.

■ In general, the Court may rely on the affidavits submitted by the agency to establish the adequacy of the search. *See Perry,* 684 F.2d at 126; *Goland v. CIA,* 607 F.2d 339, 355 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). Because the affidavits contradict the information in the Report, the Court conducted an *in camera* inspection of the option paper. That inspection confirmed the representations in the agency's affidavits. A recommendation would have been inconsistent with the format of the option paper. The paper describes several potential enforcement strategies without ranking the options and without providing space for a recommendation. Therefore, the Court concludes that the description of the option paper in the Report indeed was mistaken. The Court further finds that the mistake does not create a genuine issue of material fact regarding the adequacy of the EPA's search for the option paper. Accordingly, plaintiff is not entitled to discovery.[7]

---

**5.** Defendant does not have to conduct a new search; it simply must describe the search originally conducted in response to plaintiff's request to Region 10.

**6.** On this point, Bakalian's affidavit is corroborated by the affidavit of Charles F. Findley.

**7.** Plaintiff also argues that a genuine issue of material fact exists because the Findley affidavit states that the background paper consists of five pages, and the EPA released a redacted version with only four pages. The Bakalian affidavit states, and the Court's examination confirms, that the background paper consists of four pages. The number five in the Findley affidavit

## II. Withheld Documents

■ The EPA contends that FOIA exemptions 5 and 7 apply to the documents and portions of documents that it has withheld. Exemption 5 protects agency documents "that would not be available by law to a party ... in litigation with the Agency." 5 U.S.C. § 552(b)(5). Thus, exemption 5 permits the agency to withhold from disclosure documents that would be "privileged in the civil discovery process." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975). The exemption encompasses the deliberative process privilege, the attorney-client privilege, and the work-product privilege. *See id.; Mead Data Central, Inc. v. Department of the Air Force,* 566 F.2d 242, 252–56 (D.C.Cir.1977). Exemption 7 applies to "records or information compiled for law enforcement purposes." *Id.* § 552(b)(7). An agency may withhold such documents if releasing them would result in one of seven types of harm listed in the statute. *See id.* In this case, the EPA argues that disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The EPA submitted the affidavit of Charles F. Findley, Region 10 Director of the HWD, to support the claimed exemptions. The affidavit describes the withheld information and the basis for each exemption in sufficient detail to support the exemptions. *See Perry,* 684 F.2d at 126.

■ Plaintiff does not contest the applicability of the claimed exemptions.[8] Plaintiff asserts that the EPA waived the exemptions through issuance of the Report. Voluntary disclosure of information may waive an otherwise valid FOIA exemption.

*See Mobil Oil Corp. v. EPA,* 879 F.2d 698, 700–01 (9th Cir.1989); *Afshar v. Department of State,* 702 F.2d 1125, 1133 (D.C.Cir.1983); *Mead Data Central,* 566 F.2d at 253 & n. 24; *Cooper v. Department of Navy,* 594 F.2d 484 (5th Cir.), *cert. denied,* 444 U.S. 926, 100 S.Ct. 266, 62 L.Ed.2d 183 (1979); *United States Student Ass'n v. CIA,* 620 F.Supp. 565 (D.D.C.1985). The existence and scope of a waiver depends on the scope of the disclosure. *See Mobil Oil,* 879 F.2d at 701. The person asserting waiver of a FOIA exemption must show that "the withheld information has already been specifically revealed to the public and that it appears to duplicate that being withheld." *United States Student Ass'n,* 620 F.Supp. at 571.

■ The Report describes the contents of the documents in general terms and quotes several passages. Plaintiff contends that the Report's discussion of portions of the documents constitutes a waiver of the applicable FOIA exemptions for the documents in their entirety.[9] That argument runs contrary to the FOIA's provision that "[a]ny reasonably segregable portion of a record shall be provided ... after deletion of the portions which are exempt." 5 U.S.C.A. § 552(b). That provision is meant to liberalize disclosure, but it also makes clear that an agency may release non-exempt portions of a document while withholding exempt portions. It follows that an agency voluntarily may disclose a portion of an exempt document without waiving the exemption for the entire document. A contrary rule would create an incentive against voluntary disclosure of information and undermine FOIA's purpose

---

appears to be a typographical error. Plaintiff has not raised facts sufficient to indicate that the EPA's affidavits were submitted in bad faith. Accordingly, the error in the Findley affidavit does not create a genuine issue of material fact with regard to the adequacy of the EPA's search.

**8.** Plaintiff filed the motion for partial summary judgment asserting that the EPA waived any exemptions for the withheld information. Plaintiff invited the Court to assume *arguendo* that the claimed exemptions were appropriate. Defendant then filed a cross-motion for summary judgment contending that it was entitled

to withhold the documents under exemptions 5 and 7. Plaintiff reasserted the waiver argument in opposition to the EPA's motion for summary judgment but otherwise did not challenge the claimed exemptions.

**9.** Plaintiff relies on *In re Subpoenas Duces Tecum,* 738 F.2d 1367, 1369 (D.C.Cir.1984), and *In re Sealed Case,* 676 F.2d 793, 818 (D.C.Cir.1982). Those cases are distinguishable. Both cases concern waiver of a privilege through disclosure to a third-party rather than partial disclosure of the contents of a document. Neither case involves the FOIA.

"to open agency action to the light of public scrutiny." *Department of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976). Therefore, the Court concludes that a partial disclosure of the contents of a document does not constitute a waiver of the applicable FOIA exemptions for the entire document.

The Court now turns to the documents at issue. The Court conducted an *in camera* inspection of the documents, in part because the agency's affidavits contradicted the Report with regard to certain facts. The Court inspected the documents to determine whether the information withheld "has already been specifically revealed" in the Report. *United States Student Ass'n*, 620 F.Supp. at 571. The Court deals with the withheld portions of each document separately.

■ The Report contains a general description of the background paper:

On January 11, 1988, the HWD Director signed two internal memos addressed to the [Regional Administrator]. The Memos, a background paper and an option paper, described the changing conditions at the site. In a discussion of equity considerations, the background paper stated that Gulf as the operator of the site was responsible for a great majority of the pollution problems at Bunker Hill. However, BLP, through various actions or inactions, had contributed to many of these problems. The paper also established a link between the upstream mining companies and site contamination. The option paper discussed timing of the PRP notices and then presented options for notifying additional PRPs.

(Compl. ex. I, p. 12–13).

The EPA withheld the portion of the background paper that contains "a discussion of equity considerations." The Report merely reveals the subject of that discussion. The background paper contains detailed factual information and analysis that

the Report does not disclose. In fact, the Report discloses approximately the same information regarding the contents of the background paper that the EPA might set forth in an affidavit supporting a FOIA exemption. Therefore, the Report's description of the background paper does not constitute a waiver of the applicable exemptions. The information that the Report specifically discloses (*e.g.*, the identification of BLP) is not segregable from the exempt information. Therefore, the EPA properly withheld the relevant portion of the background paper.

■ The same passage describes the option paper. The Report characterizes the contents of the option paper without revealing any of the specific options listed in the paper. Thus, the Report merely discloses the existence of a memorandum discussing possible strategies for naming PRPs. That disclosure does not waive the applicable FOIA exemptions for the entire document.[10] The same conclusion applies to the executive summary, which is a synopsis of the option paper. The Report does not mention the executive summary itself, and its description of the option paper does not disclose the information in the executive summary. Therefore, the Court finds that the Report does not constitute a waiver of the FOIA exemptions for the option paper and the executive summary.

With regard to the ownership report, the Report states:

The report makes two important points. The first is that the corporate officers of the original Bunker Hill Company (owned by Gulf), BLP, and all the newly formed corporations (one of which is chartered in British Columbia) that now own the complex are the same people. The second point is that the majority of the corporate restructuring occurred during 1987 and 1988—the same period that the conflict over enforcement actions and naming additional PRPs was occurring. (Ex. I, p. 16).

---

**10.** As the Court noted in discussing the search issue, the Report mistakenly states that the option paper initially contained a recommendation that was deleted. That mistake does not affect the waiver issue because it does not reveal any specific information contained in the document.

In addition, the Report quotes a paragraph of the ownership report. The EPA released the quoted paragraph and withheld the remainder of the ownership report. Like the background and option papers, the ownership report contains detailed factual information and analysis that the IG's Report does not reveal. Although the Report discloses some information within the ownership report, that information is inextricably combined with undisclosed information. There is no reasonably segregable portion of the document to which waiver applies. Therefore, withholding the undisclosed portions of the ownership report was proper.

 The fifth document, the notice letter memo, accompanied a draft PRP letter. The Report mentions the draft PRP letter, but it does not mention the memo. According to the Report, the director of the CERCLA Enforcement Division drafted "revised" and "softer" language for a PRP letter and sent the draft to the Office of Regional Counsel. The EPA released the draft letter, but it withheld the memo. Because the Report does not reveal any information regarding the notice letter memo, waiver does not apply and the EPA properly withheld the memo.

### Conclusion

The EPA has provided adequate affidavits with regard to its search in response to plaintiff's FOIA request to EPA headquarters. However, the EPA has not provided adequate affidavits describing the search in response to plaintiff's request to EPA Region 10. After examining the five documents that the EPA has withheld in whole or part, the Court concludes that the EPA has released all of the information subject to waiver through the IG's Report. Accordingly, the Court denies plaintiff's motion for partial summary judgment. The Court grants defendant's motion for summary judgment with regard to the adequacy of the search by EPA headquarters, and with regard to the exemptions claimed for the withheld documents. The Court denies without prejudice defendant's mo-

tion for summary judgment with regard to the search by Region 10.