2020 IL App (1st) 191131-U

FIRST DIVISION
October 19, 2020

No. 1-19-1131

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| MANCINI LAW GROUP, P.C., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 17 CH 13881 |
| | ) | |
| SCHAUMBURG POLICE DEPARTMENT, | ) | The Honorable |
| | ) | Franklin U. Valderrama, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE PIERCE delivered the judgment of the court.
Justice Griffin concurred in the judgment.
Justice Hyman dissented.

**ORDER**

¶ 1   *Held*:   The judgment of the circuit court is affirmed. Defendant did not waive its right to produce redacted accident reports under FOIA by providing unredacted copies of those reports to a third-party vendor for the State of Illinois for the purposes of complying with its mandatory reporting obligations under the Vehicle Code.

¶ 2   Plaintiff, Mancini Law Group, P.C., appeals from the circuit court's entry of summary judgment in favor of defendant, Schaumburg Police Department. The circuit court found that there was no genuine issue of material fact as to whether defendant properly redacted information from the records it provided to plaintiff in response to plaintiff's request under the Freedom of

Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2016)), and that defendant did not waive its right to produce redacted accident reports to plaintiff after providing unredacted copies of the reports to LexisNexis, a third-party vendor for the State of Illinois. Plaintiff's sole argument on appeal is that defendant waived any right to withhold the unredacted accident report records because it earlier provided unredacted accident reports to LexisNexis. For the following reasons, we affirm the judgment of the circuit court.

¶ 3                                      I. BACKGROUND

¶ 4      Plaintiff sent a FOIA request to defendant seeking "all traffic accident reports for all motor vehicle accidents occurring within the Village of Schaumburg" for a two-week period during 2017. Plaintiff requested that defendant redact personal information—including driver's license numbers, license plate numbers, and dates of birth—from the reports. Defendant granted in part and denied in part plaintiff's request. Defendant asserted that driver's license numbers, personal telephone numbers, home addresses, and license plate numbers were exempt from disclosure under section 7(1)(b) of FOIA (*id.* § 7(1)(b)), and dates of birth and insurance policy account numbers were exempt from disclosure under section 7(1)(c) (*id.* § 7(1)(c)). The names of the persons involved in the accident, both drivers and witnesses, were not redacted. Defendant produced redacted copies of the requested accident reports.

¶ 5      Plaintiff filed a complaint in the circuit court of Cook County, asserting that it had sought nonexempt public records and that defendant's redactions from the accident reports were willful and intentional violations of FOIA. Plaintiff sought declaratory and injunctive relief, civil penalties, and attorney fees. Defendant's motion to dismiss plaintiff's complaint was denied,[1] and the parties engaged in discovery.

---

[1]Defendant's motion to dismiss argued, in part, that defendant did not have the legal capacity to be sued because it was merely a division of the Village of Schaumburg. The circuit court disagreed and

¶ 6    The parties filed cross-motions for summary judgment, which were fully briefed. Plaintiff asserted, in relevant part, that the redacted information—including home addresses, home phone numbers, driver's license numbers, dates of birth, policy numbers, and license plate numbers—was not protected information under FOIA and that, even if the information was protected, defendant waived any exemptions to disclosure by providing unredacted versions of the accident reports pursuant to a contract with LexisNexis. Plaintiff further asserted that "for years, [defendant] has produced completely unredacted copies of traffic accident reports to LexisNexis," and that as recently as January 2018, "LexisNexis was used to purchase a completely unredacted *** traffic accident report." Defendant responded that it provides unredacted versions of the accident reports to LexisNexis, an approved third-party vendor for the State of Illinois, as part of defendant's mandatory reporting requirements under section 408 of the Illinois Vehicle Code (625 ILCS 5/11-408 (West 2016)).[2] After hearing oral argument, the circuit court entered a written order entering summary judgment in favor of defendant and against plaintiff, finding the redacted information was exempt under FOIA and that defendant's furnishing of unredacted accidents reports to LexisNexis did not waive any right to redact the reports because the disclosure to LexisNexis was required by statute. Plaintiff filed a timely notice of appeal.

¶ 7                                    II. ANALYSIS

¶ 8    On appeal, plaintiff does not argue that the redacted information is not exempt under sections 7(1)(b) or 7(1)(c). As noted above, in plaintiff's FOIA request, plaintiff requested that defendant redact the driver's license numbers, license plate numbers, and dates of birth from the

_____

concluded that defendant is a "public body" for the purposes of FOIA. Defendant does not challenge the circuit court's conclusion on appeal.

[2] The State has a statutory duty to maintain the confidentiality of accident reports in its possession, subject to narrow exceptions. 625 ILCS 5/11-412 (West 2018); *Arnold v. Thurston*, 240 Ill. App. 3d 570, 573-74 (1992).

accident reports. *Supra* ¶ 4. In other words, plaintiff never sought that information. As such, the circuit court was left with deciding whether disclosure of a motorist's home address, home phone number, and insurance policy numbers, constitutes a clearly unwarranted invasion of the personal privacy of those motorists involved in a traffic accident and therefore eligible for an exemption. In its combined response to defendant's cross-motion for summary judgment and reply brief in support of its motion for summary judgment, plaintiff for the first time argued that defendant waived any right to redact information from the reports, thereby entitling plaintiff to the full, unredacted reports containing information that it never originally sought. On appeal, plaintiff's sole argument is that defendant waived its right to claim the names and addresses shown in the accident reports were exempt from disclosure because defendant, pursuant to a contract, provided unredacted accident reports, including names and addresses, to LexisNexis, which in turn sells the unredacted reports to the public, again presumably seeking the entire unredacted accident reports.

¶ 9 Plaintiff relies on our supreme court's decision in *Lieber v. Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401 (1997) to argue that the voluntary disclosure of unredacted records in one situation precludes a later assertion that the previously unredacted information can be withheld as exempt from disclosure under FOIA. Plaintiff asks us to reverse the entry of summary judgment in favor of defendant.

¶ 10 Summary judgment is appropriate if the pleadings, depositions, affidavits, and other admissions on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016); *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 17. The purpose of summary judgment is not to try a question of fact, but rather to determine whether one exists. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002). "When parties file cross-motions for summary judgment, they mutually agree that there are no

genuine issues of material fact and that only a question of law is involved." *Jones v. Municipal Employees' Annuity & Benefit Fund*, 2016 IL 119618, ¶ 26. We review a circuit court's ruling on summary judgment *de novo*. *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 15.

¶ 11     Section 1 of FOIA provides, in part,

> "Pursuant to the fundamental philosophy of the American constitutional form of government, it is declared to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act. Such access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest.

> The General Assembly hereby declares that it is the public policy of the State of Illinois that access by all persons to public records promotes the transparency and accountability of public bodies at all levels of government. It is a fundamental obligation of government to operate openly and provide public records as expediently and efficiently as possible in compliance with this Act.

> This Act is not intended to cause an unwarranted invasion of personal privacy, nor to allow the requests of a commercial enterprise to unduly burden public resources, or to disrupt the duly-undertaken work of any public body independent of the fulfillment of any of the fore-mentioned rights of the people to access to information." 5 ILCS 140/1 (West 2016).

¶ 12    "All records in the custody or possession of a public body are presumed to be open to inspection or copying. Any public body that asserts that a record is exempt from disclosure has the burden of proving by clear and convincing evidence that it is exempt." *Id.* § 1.2. FOIA is to be liberally construed while its exemptions are to be narrowly construed. *Rushton v. Department of Corrections*, 2019 IL 124552, ¶ 15 (citing *Southern Illinoisian v. Illinois Department of Public Health*, 218 Ill. 2d 390, 416 (2006)).

¶ 13    Section 7(1) of FOIA provides:

> "When a request is made to inspect or copy a public record that contains information that is exempt from disclosure under this Section, but also contains information that is not exempt from disclosure, the public body may elect to redact the information that is exempt. The public body shall make the remaining information available for inspection and copying." 5 ILCS 140/7(1) (West 2016).

¶ 14    FOIA provides that certain information "shall be exempt from inspection and copying," such as "private information, unless disclosure is required by another provision of this Act, a State or federal law or a court order." *Id.* § 7(1)(b)). Also exempt from disclosure is

> "Personal information contained within public records, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy, unless the disclosure is consented to in writing by the individual subjects of the information. 'Unwarranted invasion of personal privacy' means the disclosure of information that is highly personal or objectionable to a reasonable person and in which the subject's right to privacy outweighs any legitimate public interest in obtaining the information. The disclosure of information that bears on the public

duties of public employees and officials shall not be considered an invasion of personal privacy." *Id.* § 7(1)(c).

¶ 15 In *Lieber*, our supreme court considered whether Southern Illinois University properly denied a FOIA request made by the plaintiff that sought "information about housing inquiries from or on behalf of people who had been accepted as freshman, but who had not yet enrolled." 176 Ill. 2d at 410. Our supreme court found that the specific information sought by the plaintiff was not exempt under a FOIA exemption that applied "to 'other individuals receiving*** educational *** services,' as well as to 'students.' " *Id.* at 410-411 (citing 5 ILCS 140/7(1)(b)(i) (West 1994)). Additionally, the supreme court rejected the university's claim that the names and addresses of accepted students were private because the university "routinely makes available to other groups, including the local newspaper and religious organizations, lists containing the names and addresses of individuals who have been accepted by the University but who have not yet enrolled." *Id.* at 412-13. The court endorsed federal decisions holding that "voluntary disclosure in one situation can preclude later claims that records are exempt from release to someone else." *Id.* at 413 (citing *Cooper v. United States Department of the Navy*, 594 F.2d 484, 485-86 (5th Cir. 1979)). The court further agreed that "selective disclosure by the government 'is offensive to the purposes underlying the FOIA and intolerable as a matter of policy. Preferential treatment of persons or interest groups fosters precisely the distrust of government the FOIA was intended to obviate.' " *Id.* (quoting *State of North Dakota ex rel. Olson v. Andrus*, 581 F.2d 177, 182 (8th Cir. 1978)). The court found that the principles outlined in *Cooper* and *Andrus* "should be applied here to bar the University from asserting an exemption" under FOIA. *Id.*

¶ 16 Here, plaintiff concedes that "LexisNexis is acting as a contractor for the State of Illinois and a conduit for [defendant] to fulfill its reporting requirements to the State." Section 11-408 of

7

the Vehicle Code requires the filing of motor vehicle accident reports with the Secretary of State and the Department of Transportation. 625 ILCS 5/11-408 (West 2016). Rather than defendant sending accident reports directly to the State, the State employs LexisNexis as its agent to receive and maintain accident reports. By doing so, we see no reason to find defendant's compliance with a statutory reporting requirement to be the equivalent of a "selective disclosure," or "preferred treatment" as discussed in *Lieber*.

¶ 17      Plaintiff relies on *Lieber* to argue waiver because defendant provides unredacted accident reports to LexisNexis, which, it contends, in turn sells the reports to the public for a profit. Plaintiff asserts that defendant did not establish that it is required to provide unredacted reports to LexisNexis to comply with its reporting obligations because defendant could manually provide the information directly to the State. This argument is unpersuasive where it is undisputed that the Vehicle Code requires defendant to send accident reports to the State and the State, in turn, directs that compliance is accomplished by the defendant sending the reports to the State's agent, LexisNexis.

¶ 18      There is also a contractual agreement between defendant and LexisNexis. Requests for defendant's accident reports are processed through LexisNexis for a $13 fee, with defendant receiving $5 from LexisNexis. Plaintiff argues that there are no restrictions in the agreement between defendant and LexisNexis on what LexisNexis may do with the unredacted accident reports it receives from defendant when it complies with the Vehicle Code reporting requirement. Plaintiff contends, therefore, that defendant should be barred from providing redacted versions to plaintiff because defendant voluntarily discloses the unredacted reports to LexisNexis while simultaneously withholding certain information from the general public unless the public pays a fee.

¶ 19    We find that, based on the record before us, defendant's provision of unredacted accident reports to LexisNexis occurs in compliance with the reporting requirement under the Vehicle Code. There is no other furnishing of records to LexisNexis other than under the mandatory reporting requirement. As such, defendant's conduct does not amount to a "selective disclosure" or "preferential treatment" as contemplated in *Lieber*. In *Lieber*, it was uncontested that the university "routinely makes available to other groups, including the local newspaper and religious organizations, lists containing the names and addresses of individuals who have been accepted by the University but who have not yet enrolled." *Lieber*, 176 Ill. 2d at 412-13. By voluntarily disclosing the names and addresses of those individuals to others, the university could not assert that the information it withheld from the plaintiff was confidential.

¶ 20    But here, the record clearly reflects that defendant provides the unredacted accident reports to LexisNexis for mandatory reporting purposes. Jennifer Brack, a corporate representative for defendant, testified that defendant had a contract with LexisNexis, "a contracted vendor for the [S]tate [of Illinois]," as part of defendant's obligation to provide all accident reports to the State, which plaintiff does not dispute. Defendant uses LexisNexis to upload unredacted copies of the accident reports to the State. Anyone that wants to obtain a copy of an accident report may request the report in person, by mail, or through the LexisNexis website link provided on defendant's website. Brack stated that "I believe [LexisNexis] ha[s] their own safeguards in place of who can purchase a report," and further stated that "the only parties that can receive [an accident report] through [LexisNexis] are those parties directly involved," such as the drivers or their insurers. Brack testified that it was her understanding that in order to obtain a report through LexisNexis, the requesting party would need to know specific information about the report, including the date of the accident, the location of the accident, and the accident report number. To complete a

purchase through LexisNexis, the requesting party was also required to provide a driver's license number that must match a driver's license number in the accident report. Brack explained that defendant would provide a unredacted copy of the accident report to those who were involved in the accident or their insurers, but that defendant would make redactions if the requesting party was not involved in the accident.

¶ 21    Plaintiff does not direct our attention to any facts in the record to contradict Brack's testimony, or that would call into question that defendant provides unredacted accident reports to LexisNexis to comply with its reporting obligations. Plaintiff's argument that defendant failed to demonstrate that it is required to provide the reports to LexisNexis to comply with its statutory obligations finds no support in the record. Brack testified that defendant could either upload the accident reports to LexisNexis, or that the State could manually enter all the accident report data itself. Plaintiff does not cite any evidence in the record, or to any other authority, to support its contention that defendant's statutorily mandated act of uploading the unredacted accident reports to a third-party State-approved vendor for transmission to the State is a public disclosure of the accident reports. Defendant is required to provide the State with the accident reports and there is nothing in the record to suggest that the availability of an alternative method—manual entry— undermines defendant's invocation of the exemptions claimed.

¶ 22    Plaintiff insists that LexisNexis acts as a third-party reseller of the accident reports. This argument is premised on plaintiff's theory that anyone can pay LexisNexis a $13 fee and obtain a copy of a unredacted accident report, and that defendant receives $5 from each accident report sold by LexisNexis. But plaintiff failed to present any admissible evidence to support its assertion that defendant's unredacted accident reports are available to the public for a fee payable to LexisNexis. Plaintiff's statement of facts directs us to an affidavit of Michael Camarata, an attorney at

plaintiff's office. Camarata's affidavit was filed during briefing on defendant's motion to dismiss and was referenced in plaintiff's reply in support of its motion for summary judgment. But plaintiff does not make any argument that (1) the circuit court failed to draw any reasonable inferences from Camarata's affidavit in plaintiff's favor, (2) the affidavit creates a genuine issue of material fact, or (3) Camarata's affidavit entitles plaintiff to summary judgment. These failures result in forfeiture of this argument. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("Points not argued are forfeited ***.]").

¶ 23    Forfeiture aside, Camarata's affidavit asserts that in January 2018, during the pendency of this case, he purchased an unredacted version of one of defendant's accident reports from LexisNexis. The accident report and a receipt for his fee were attached to his affidavit. Camarata's affidavit provides little factual insight into what information he provided to LexisNexis to purchase the accident report. As Brack testified, however, Camarata would have had to submit the names of the parties involved in the accident, the date and location of the accident, and the accident report number. The receipt for Camarata's purchase indicates that he provided that information. Furthermore, in a section entitled "Purpose of Use," Camarata listed "Legal." Brack testified that an attorney representing an individual involved in a reported accident would be able to obtain an unredacted copy of that accident report. Absent any indication in Camarata's affidavit as to whether he represented any party named in the accident report, the affidavit does not sufficiently support plaintiff's conclusion that LexisNexis acts as a third-party reseller of unredacted accident reports without limitation. The record before us demonstrates that defendant only provides LexisNexis with unredacted accident reports in order to comply with its mandatory reporting obligations, and that purchases of unredacted copies of those reports—either through defendant directly or through LexisNexis—are limited to those who provide specific information at the time

of the request and are entitled—either by way of being involved in the accident, representing someone involved in the accident, or an insurance company identified as insuring someone involved in accident—to the unredacted information therein.

¶ 24    The dissent distorts the state of the record to support its position. To be clear, if there was any admissible evidence that LexisNexis was selling unredacted accident reports, it was incumbent on plaintiff to submit that evidence. Plaintiff offered no credible evidence of LexisNexis's sale policies or practices regarding defendant's accident reports. The dissent repeatedly makes the unsupported assertion that LexisNexis is free to sell unredacted reports to the public (*infra* ¶¶ 32, 34-35, 38), despite Brack's unrebutted testimony that purchasers must demonstrate some connection to an underlying accident before they can purchase an unredacted report through LexisNexis (*supra* ¶ 20). Neither plaintiff nor the dissent identifies any actual evidence in the record showing that LexisNexis sells the reports to the public with no restrictions. And while defendant's contract with LexisNexis might be silent on whether there were restrictions on the distribution of the accident reports, the unrebutted testimony in the record shows that there were restrictions on who could purchase unredacted reports and these restrictions applied whether the request for a report was made to defendant or LexisNexis. If plaintiff wanted to establish an actual lack of restrictions or otherwise demonstrate a genuine issue of material fact—an issue plaintiff never raised or argued, and raised *sua sponte* by the dissent (*infra* ¶¶ 41-49)—it needed to present evidence of that in the circuit court and not rely on this court to fill that gap. It did not, and it is not the function of this court to advance arguments or to speculate on evidence that might have been presented to make plaintiff's case.

¶ 25    The evidence and arguments advanced in support of plaintiff's waiver argument are not supported by the record and do not demonstrate to our satisfaction that entry of summary judgment

in favor of defendant should be reversed. To be clear, we find that, based on the actual record before us, plaintiff has not presented sufficient facts to establish that defendant's conduct amounts to waiver under the rule articulated in *Lieber*. The dissent's assertion that we have "establishe[d] a new rule of law" (*infra* ¶ 52), and that we do "not follow the existing rule of law set forth in *Lieber*" (*infra* ¶ 53), is nothing more than a misreading of our holding. We find no error with the circuit court's entry of summary judgment in favor defendant and affirm the judgment of the circuit court.

¶ 26                                  III. CONCLUSION

¶ 27    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 28    Affirmed.

¶ 29    JUSTICE HYMAN dissenting:

¶ 30    I dissent both on the merits and on the majority issuing this decision as an Order under Supreme Court Rule 23(b) (eff. Apr. 1, 2018). On the merits, the majority justifies its conclusion by ignoring material facts, including that the mandatory reporting requirements and the sale of the unredacted reports are interrelated. Making matters worse, the majority cites no authority for its position. On issuing this decision as a Rule 23 Order, the criteria set out in Rule 23(a) belie the majority's assessment. Moreover, the time has come for the Illinois Supreme Court to amend Rule 23(a) so a single panel member may designate a decision as precedential. This will contribute to the advancement, clarification, and evolution of the law in Illinois for the common benefit of the parties, their lawyers, the bench and bar, and, most of all, the people of the State of Illinois.

¶ 31                     SPD Waived Denying FOIA Request

¶ 32    The Schaumburg Police Department contends it did not waive its right to withhold unredacted accident reports from a Freedom of Information Act request because LexisNexis, a

non-governmental, third-party vendor, was merely performing SPD's mandatory reporting requirements under section 408 of the Illinois Vehicle Code (625 ILCS 5/11-408 (West 2016)). But, as Mancini has shown, SPD went much further, contracting with LexisNexis to allow it to sell the unredacted accident reports to the public, without restrictions or privacy protections. According to Mancini, by authorizing LexisNexis to sell the unredacted accident reports to the public, SPD waived the right to deny the FOIA request at issue.

¶ 33     An analogous case, *Lieber v. Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401 (1997), supports reversal. In *Lieber*, the Illinois Supreme Court held that Southern Illinois University must comply with a FOIA request when it disclosed the same information to other entities, including the local newspaper and religious organizations. *Lieber*, 176 Ill. 2d at 412-13. "Voluntary disclosure in one situation can preclude later claims that records are exempt from release to someone else." *Id*. at 413 (citing *Cooper v. United States Department of the Navy*, 594 F. 2d 484, 485-86 (5th Cir. 1979). Applying this principle, the court noted, "[p]referential treatment of persons or interest groups fosters precisely the distrust of government the FOIA was intended to obviate." *Id*. (citing *State of North Dakota ex rel. Olson v. Andrus*, 581 F. 2d 177, 182 (8th Cir. 1978).

¶ 34     Notwithstanding the majority's efforts to dissociate *Lieber* from its holding, *Lieber*'s factual differences do not diminish applying the decision and its reasoning here. The majority attempts to distinguish *Lieber* on the grounds that SPD does not act "voluntarily" in complying with the mandatory administrative function performed by LexisNexis. But the flaw in the majority's reasoning is its refusal to appreciate that SPD separately contracted with LexisNexis to also permit the company to market those unredacted reports to the public for a profit, and that voluntary act constitutes waiver, as in *Lieber*. Moreover, neither SPD nor the majority cite a single

case or authority that says a governmental entity can both withhold unredacted records under FOIA, while, at the same time, let a non-governmental, third-party vendor sell the unredacted records to the public.

¶ 35    The majority believes the analysis stops once LexisNexis satisfies SPD's statutory reporting requirement. Indeed, if that were the sole purpose of providing the unredacted reports to LexisNexis, I would be inclined to agree. But SPD's contract with LexisNexis violates the "selective disclosure," or "preferred treatment" discussed in *Lieber*. The contract, which is in the record, places no restrictions on LexisNexis's use of the unredacted reports or to whom LexisNexis may sell them. Also noteworthy, LexisNexis hands over part of its renumeration to SPD.

¶ 36    The Illinois FOIA Act is patterned after that federal statute and lawmakers intended that federal case law be used in interpreting the Act. *Cooper v. Department of the Lottery*, 266 Ill. App. 3d 1007, 1012 (1994). Regarding statutorily mandated disclosure and waiver, the Ninth Circuit's decision in *Watkins v. United States Bureau of Customs and Border Protection*, 643 F. 3d 1189 (9th Cir. 2011), is instructive.

¶ 37    In *Watkins*, a copyright and trademarks attorney filed FOIA requests with the U.S. Bureau of Customs and Border Protection, seeking Notices of Seizure of Infringing Merchandise ("Notices of Seizure") sent by CBP to trademark owners after seizing counterfeit merchandise at a port. *Id*. at 1192. By statute, CBP must disclose the Notices of Seizure to the aggrieved trademark owner. See 19 U.S.C. § 1526(e)). But CBP imposed no restrictions on the trademark owner's use of the information in the Notice, so the owner could "freely disseminate the Notice to his [or her] attorneys, business affiliates, trade organizations, the importer's competitors, or the media ***." *Id*. The court found that "[t]his no-strings-attached disclosure *** voids any claim to confidentiality and constitutes a waiver" of the exemption. *Id*.

15

¶ 38    SPD had a statutorily imposed reporting requirement and used LexisNexis to perform that function. But SPD placed no restrictions on LexisNexis's distribution of unredacted accident reports, though it could have, and LexisNexis distributed the unredacted reports to customers willing to pay for them. As in *Watkins*, this "no-strings attached" disclosure waived the exemption.

¶ 39    Moreover, in claiming the right to refuse to release the same information under the FOIA request, SPD undermined the purpose of the FOIA, which is to "provide the public with easy access to government information." *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 417 (2006). See *BlueStar Energy Services, Inc. v. Illinois Commerce Commission*, 374 Ill. App. 3d 990, 994 (2007) ("The purpose of the FOIA is to open governmental records to the light of public scrutiny"). To achieve that goal, our supreme court has held that the Act shall be accorded a liberal construction and the exceptions to disclosure narrowly construed. *Southern Illinoisan*, 218 Ill. 2d at 416. Indeed, under the FOIA, public inspection and copying of public records is presumed. 5 ILCS 140/1.2 (West 2016).

¶ 40    The majority's holding opens a pungent loophole. It lets government entities avoid their responsibilities regarding public records under the FOIA while giving a freehand in marketing and selling unredacted public records to non-government, for-profit third-party vendors.

¶ 41                          Disputed Questions of Fact

¶ 42    According to the majority, the record "clearly" reflects that SPD provides unredacted accident reports to LexisNexis for mandatory reporting purposes. The majority quotes the deposition testimony of Jennifer Brack, that she "believe[s] [LexisNexis] ha[s] their own safeguards in place of who can purchase a report," and, to obtain a report through LexisNexis, "her understanding" was that the requesting party would need to know specific information about the report, including the date of the accident, the location of the accident, and the accident report

16

number. According to the majority, Brack's testimony shows that purchasers "must demonstrate some connection to an underlying accident before they can purchase an unredacted report through LexisNexis." But Brack's "belief" and her "understanding" is not evidence of LexisNexis's policies about who can purchase an accident report from LexisNexis. Indeed, SPD's website, of which we can take judicial notice (*Kopnick v. JL Woode Management Co*., 2017 IL App (1st) 152054, ¶ 26) directs users who want to purchase a traffic accident report to the LexisNexis website. LexisNexis describes itself as "Your go-to source for nationwide access" and its website states that not only involved parties, but "commercial account holders" can purchase crash reports. Presumably, this would include third parties, including insurance companies, but a "commercial account holder" could also be a newspaper, a private investigator, a lawyer, or any other number of private individuals.

¶ 43    Without more evidence beyond Brack's beliefs about LexisNexis's practices and policies, a material question of fact remains—whether the company sells unredacted reports to its customers.

¶ 44    The majority contends Mancini does not direct the court's attention to any facts in the record to contradict Brack's testimony, or that would call into question that SPD provides unredacted accident reports to LexisNexis to comply with its reporting obligations. Not so. As the majority notes, Michael Camarata, an attorney at Mancini's office, submitted an affidavit asserting he purchased an unredacted version of one of SPD's accident reports from LexisNexis. The majority contends Camarata's affidavit does not state what information he provided to LexisNexis to purchase the accident report. The majority further notes that Brack testified Camarata would have had to submit the names of the parties involved in the accident, the date and location of the accident, and the accident report number. Yet, as noted, Brack testified as to what she believed

was LexisNexis's practices. Nothing in the record indicates that LexisNexis follows the procedures Brack "believed" to be in place. The discrepancy between what Brack believed to be LexisNexis's practices and Camarata's first-hand experience in obtaining a police report from LexisNexis created a genuine issue of material fact as to whether LexisNexis sells unredacted reports to the public.

¶ 45    Also, in disclosing unredacted accident reports to LexisNexis without restrictions (as provided in the contract with SPD), SPD fails to protect the privacy of individuals. As the majority says in footnote 2, "the State has a statutory duty to maintain the confidentiality of accident reports in its possession, subject to narrow exceptions. 625 ILCS 5/11-412 (West 2018); *Arnold v. Thurston*, 240 Ill. App. 3d 570, 573-74 (1992)." The contract between SPD and LexisNexis, which, as already noted is in the record, places no restriction on LexisNexis and provides none of the privacy protections the FOIA envisions.

¶ 46                    Cross-Motions for Summary Judgment

¶ 47    Where the parties file cross-motions for summary judgment, they invite the court to decide the issue as a matter of law. *Liberty Mutual Fire Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, 363 Ill.App.3d 335, 339 (2005). Nevertheless, the mere filing of cross-motions does not preclude a determination that triable questions of fact exist. *State Farm Mutual Automobile Insurance Co. v. Coe*, 367 Ill. App. 3d 604, 607 (2006). A reviewing court has the power to reverse a summary judgment order, including cross-motions for summary judgment, where the record indicates that a material question of fact exists. *Id.*

¶ 48    This court has held that the "waiver rule must not be mechanically applied whenever there is disclosure of information but, rather, requires consideration of the circumstances related to the disclosure, including the purpose and extent of the disclosure, as well as the confidentiality

18

surrounding the disclosure." *Chicago Alliance for Neighborhood Safety v. City of Chicago*, 348 Ill. App. 3d 188, 202 (2004). The record before us shows that material questions of fact exist as to LexisNexis's policies in providing accident reports to third parties and protecting the confidentiality of the subjects of those reports.

¶ 49    I would reverse the trial court order granting summary judgment for SPD and remand for further proceedings.

¶ 50                              Designation as Non-precedential Order

¶ 51    Rule 23(a) allows for publication when a majority of the panel concludes that a decision either "establishes a new rule of law or modifies, explains or criticizes an existing rule of law" or when "the decision resolves, creates, or avoids an apparent conflict of authority within the Appellate Court." Ill. S. Ct. Rule 23(a)(1)-(2) (eff. Apr. 1, 2018). This case should have been published as an opinion under Supreme Court Rule 23(a) (eff. Apr. 1, 2018) because it meets one of the Rule's criteria.

¶ 52    The majority establishes a new rule of law, satisfying a Rule 23(a) criterion for publication. Under the majority opinion, a government entity, like SPD, that is required to disclose information to the State, can release private information to a third party who sells it, yet deny access to the same information under a FOIA request. Neither the FOIA nor any prior Illinois court has so held, as evidenced by the lack of citations to authority in the majority opinion.

¶ 53    Moreover, the majority does not follow the existing rule of law set forth in *Lieber*—that "[v]oluntary disclosure in one situation can preclude later claims that records are exempt from release to someone else." *Lieber*, 176 Ill. 2d at 413. As noted, the majority attempts to distinguish *Lieber* by asserting that SPD was mandated to provide accident reports to the State but does not acknowledge SPD's voluntary act of separately contracting with LexisNexis to allow the company

to sell unredacted reports to the public for a profit. This conduct falls squarely under the holding in *Lieber*. A decision that conflicts with established precedent, at minimum, constitutes an attempt to modify existing law, and obligates publication.

¶ 54     I propose the Supreme Court consider amending Rules 23(a) in the same way it recently amended Rule 352. See Ill. S. Ct. Rule 352(a) (eff. July 1, 2018). Now Rule 352 requires oral argument at the request of one justice on the panel. Rule 23(a) should require publication as an opinion at the request of one justice on the panel.

¶ 55     I have written on this issue before. Ironically, I am forced to rely on an unpublished order to help explain my previous thoughts about unpublished orders. I consider it contrary to the purpose of appellate review that a dissent rejecting the result or rationale can be relegated to precedential oblivion, as I explained in *Snow & Ice, Inc. v. MPR Management, Inc.*, 2017 IL App (1st) 151706-U, ¶¶ 27-53 (Hyman, P.J., concurring in part and dissenting in part). Whatever persuasive value a dissent may have on future litigants and courts evaporates as an unpublished order.

¶ 56     There are no pragmatic impediments to amending Rule 23(a). Most likely, the presence of a dissent might split the panel on the question of publication. In the First District during 2018, dissents appeared in 15 of 331 opinions (4.5%) and 27 of 1162 Rule 23 orders (2.3%). While sometimes a dissenter prefers that the majority ruling remain unpublished, even if every unpublished order with a dissent had been published, the total number of published opinions would have increased just 8%. I do not perceive this slight number burdening either counsel or the courts when researching the proper disposition of a given argument. Nor would the addition of a few more Rule 23 orders without dissent have much impact on the number of opinions issued, considering that disagreements occur occasionally, although enough to necessitate a Rule change.

¶ 57	Alternatively, the court could eliminate unpublished opinions, as some states have done. See Brandon Harrison, *Extra! Extra! Arkansas's High Court Announced Two Changes That Will Affect Thousands of Attorneys*, 44 Ark. Law. 26, 26 (2009) (Arkansas Supreme Court Supreme Court does away with distinction between unpublished and published opinions, making all appellate rulings precedential). Or, like a majority of states, allow unpublished opinions to be cited as persuasive authority. See Sara J. Agne, *A People's History of The Citation of Memorandum Decisions in Arizona,* 51 Ariz. Atty 48 (2015) (noting that more than 30 states permit citation to unpublished decisions as persuasive authority). See also, *Out of Cite, Out of Mind: Navigating The Labyrinth That Is State Appellate Courts' Unpublished Opinion Practices*, 45 U. Balt. L. Rev. 561 (2016) (classifying citations rules in 50 states and the District of Columbia). Yet another possibility, as noted, is allowing a dissenter to override the majority's choice of issuing a Rule 23 order. Any of these options would be preferable to a split decision dictating the result.

¶ 58	On precedent, Lord Mansfield famously observed, "The reason and spirit of cases make law; not the letter of particular precedents." *Fisher v Prince*, 3 Burr. 1362, 1364 (1762). But unless issued as a Rule 23(a) opinion, neither the reason nor the spirit of a case makes law in Illinois. At least, the say of a single panel member should be enough to preserve "the reason and spirit of cases."